535 So.2d 895 (1988)
Angelo Anthony CHANDARLIS, Sr., et al., Plaintiffs-Appellants,
v.
Mrunalin B. SHAH, M.D., et al., Defendants-Appellees.
No. 19880-CA.
Court of Appeal of Louisiana, Second Circuit.
September 21, 1988.
Hunter & Jack by Frances Baker Jack, Shreveport, Bailey & Negem by Blake Bailey, Tyler, Tex., for plaintiffs-appellants.
Lunn, Irion, Johnson, Salley & Carlisle by James B. Gardner, Shreveport, for defendants-appellees Mrunalin B. Shah, M.D., and Keith Mason, M.D.
Cook, Yancey, King & Galloway by Sidney E. Cook, Shreveport, for defendants-appellees, Heinz K. Faludi, M.D., and Jorge Martinez-Leyva, M.D.
Hudson, Potts & Bernstein by Jesse D. McDonald, Monroe, for defendants-appellees, Stephen P. Youngberg, M.D., Herbert B. Master, M.D., Loyd G. Whitley, Jr., M.D., and Abdul R. Ebrahim, M.D.
Blanchard, Walker, O'Quin & Roberts by Lawrence W. Pettiette, Jr., Shreveport, for Robert S. Thornton.
Before HALL, JASPER E. JONES and FRED W. JONES, Jr., JJ.
JASPER E. JONES, Judge.
In this medical malpractice case we affirm a judgment sustaining an exception of prescription. The appellants are Angelo Chandarlis, Sr., individually and as administrator of the estate of his minor son, Angelo Chandarlis, Jr., and Adela Chandarlis. The appellees are eight doctors allegedly involved in the treatment of Angelo, Jr.[1]
This case arises from a tragic accident. On August 17, 1982, Angelo, who was then fourteen, was injured when he fell from a rope while swinging and landed in shallow water in the Sabine River in Gregg County, Texas. Angelo suffered severe injuries to his cervical spine and spinal cord.
Angelo was first hospitalized in Longview, Texas. On August 24, 1982, Angelo was transferred to Physicians and Surgeons Hospital in Shreveport, Louisiana, where he was allegedly treated by the appellees. When he was admitted at P & S Angelo was paralyzed from the neck down but alert and capable of speaking.
*896 On August 27, 1982, Angelo suffered an electrolyte imbalance which caused him to suffer seizures and become comatose. Due to these problems Angelo suffered serious brain damage which greatly limited the extent of his possible rehabilitation. On October 21, 1982, Angelo was transferred from P & S to health care facilities in Dallas, Texas. Later he was also treated at the Shriner's Hospital in Philadelphia, Pennsylvania, and the Texas Institute of Research and Rehabilitation in Houston, Texas.
On November 2, 1984, the Chandarlis' filed suit against numerous defendants, including each of the doctors involved here, except Dr. Ebrahim, in Gregg County, Texas, for damages. The Texas suit was served on the doctors on November 16, 1984. The Louisiana doctors involved here were dismissed from the Texas action on September 24, 1985, for lack of jurisdiction.
On November 1, 1985, the Chandarlis family filed an action against P & S in United States District Court. By a certified letter dated October 20, 1985, Angelo's parents, individually and on his behalf, filed proceedings for a medical review panel. On July 13, 1987, the appellees filed an exception of prescription in the First Judicial District Court, Caddo Parish, Louisiana, as permitted under LSA-R.S. 40:1299.47 B(2)(a).[2]
The exception was tried on October 22, 1987, at which time the trial judge sustained the exception finding the one year prescription of LSA-R.S. 9:5628[3] applicable. This appeal followed.
Appellants contend that prescription of the claim did not begin to run until February, 1984, and that the filing and service of the Texas action in November, 1984, interrupted both the one and three year prescription periods of LSA-R.S. 9:5628. The foundation of this argument is that prescription did not begin to run until February, 1984. The appellants contend the trial judge erred by applying the wrong standard to determine when prescription began to run. They contend that under the correct standard, which they argue is set out in Griffin v. Kinberger, 507 So.2d 821 (La. 1987), prescription did not begin to run until February, 1984, rather than in August, 1982, as the trial judge found.
Our review of the record indicates there may be merit to appellants' contention that the trial judge applied the wrong test to determine when prescription began to run.[4] However, we affirm the judgment because his conclusion was correct even when the applicable tests set out in Griffin are applied.
In Griffin the court said:
The one-year prescriptive period commences running on the date the injured *897 party discovers or should have discovered the facts upon which his cause of action is based. Lott v. Haley, 370 So.2d 521 (La.1979). Constructive knowledge sufficient to commence the running of prescription, however, requires more than a mere apprehension that something might be wrong. Cordova v. Hartford Accident & Indemnity Co., 387 So. 2d 574 (La.1980). Prescription does not run against one who is ignorant of the facts upon which his cause of action is based, as long as such ignorance is not willful, negligent or unreasonable. Young v. Clement, 367 So.2d 828 (La. 1979). Thus, even if a malpractice victim is aware that an undesirable condition developed at some point in time after the medical treatment, prescription does not run as long as it was reasonable for the victim not to recognize that the condition may be related to the treatment. 507 So.2d at pp. 823-824.
The court in Griffin further said "the proper focus is on the reasonableness of the tort victim's action or inaction. 507 So.2d at 824.
At the trial of this matter appellees showed that the Chandarlis family had been fully advised of the facts of this matter on the day of Angelo's seizure.
Dr. Loyd Whitley, a specialist in pulmonary disease in intensive care medicine, testified that the management of Angelo's electrolytes was part of his function. He testified that he met with Angelo's parents on the day of the seizure and told them Angelo had suffered an electrolyte imbalance which caused his seizure. He further testified that he told the Chandarlis' that the imbalance was a total surprise to him and he had not anticipated this as a problem.
Dr. Jorge Martinez, a neurosurgeon involved in Angelo's case, also met with the Chandarlis family on the day of the seizure. Dr. Martinez testified he communicated with the family in both English and Spanish. Dr. Martinez testified he reviewed the changes in Angelo's condition, including a detailed explanation of the electrolyte problem, with his parents.
Dr. Whitley testified that within two days of the seizure Mrs. Chandarlis complained that Angelo's electrolytes had not been properly monitored and that he would not have suffered the seizure had they been.
Mrs. Chandarlis testified on cross-examination that both Dr. Whitley and Dr. Martinez told her about the electrolyte imbalance. She testified Dr. Martinez told her, "Something went wrong." Rec. p. 87. She testified she was advised the electrolyte imbalance caused her son's worsened condition and that the doctors had no explanations for how the imbalance occurred.
Dr. George Wharton of Dallas testified by deposition. He stated that, within a week to ten days of Angelo's October 21, 1982, transfer to Dallas, Mrs. Chandarlis had told him she did not feel Angelo's electrolytes had been properly monitored in Shreveport.
The appellants attempted to show they had not been aware of any possible malpractice until Mrs. Chandarlis took Angelo to Shriner's Hospital in January, 1984.
Mrs. Chandarlis testified that she did not understand the electrolytes and that the doctors and staff at P & S were evasive in response to her questions attempting to determine who was to blame for Angelo's seizure.
Mrs. Chandarlis' testimony concerning her understanding of the electrolyte problem is contradicted by the testimony of Dr. Whitley and Dr. Martinez who each testified they were explained to her the day of Angelo's seizure. Her testimony is also contradicted by her actions at P & S in complaining about the electrolyte monitoring and its role in causing the seizure. It is also contradicted by her discussions of electrolytes with Dr. Wharton within ten (10) days of her arrival in Dallas with Angelo. Further, it is contradicted by the testimony of Dr. Randal Betz of Philadelphia who testified that even before Mrs. Chandarlis came to Philadelphia she had formulated the "scenario that it was electrolytes" that caused Angelo's worsened condition.
*898 Appellants argue that despite the facts and information which were conveyed to them at P & S they were reasonable in delaying filing suit because, until January, 1984, no medical source had confirmed their opinion that Angelo had been the victim of malpractice. We cannot agree.
The evidence shows that the Chandarlis family was fully advised of the facts surrounding Angelo's seizure. They were told of the condition which caused the seizure and the injuries caused by the seizure. The doctors advised them the problem was unanticipated and a surprise. They advised them that something went wrong. In contrast to the doctor in Griffin the doctors involved here did not offer any misleading explanations of the condition.
The appellants were aware of the facts of the incident upon the day that it happened. From these facts they could and did infer that Angelo's worsened condition had resulted from improper medical care, specifically inadequate monitoring of the electrolytes.
That they did make the inference and conclusion of improper care is shown by the complaints of Mrs. Chandarlis to the hospital staff made in the presence of Dr. Whitley, by their decision to remove Angelo from P & S due to dissatisfaction with his care and by Mrs. Chandarlis' remarks to Dr. Wharton made within ten days of Angelo's transfer to Dallas on October 21, 1982.
Under these circumstances appellants had far more than a mere apprehension something might be wrong. They had knowledge of the harm and the condition which caused it. Further, they had been advised by the doctors that something went wrong and that the occurrence of the harm causing the condition had been a surprise. They had not been misled by any self-serving explanations from the doctors. On the day of the seizure, August 27, 1982, and certainly no more than two days later when Mrs. Chandarlis complained to the staff at P & S, the appellants knew they had a potential cause of action against the treating physicians and prescription began to run.
The appellants did not, however, institute their Texas suit until more than two years later, thus, it was not in time to interrupt the one year prescription of their claim against the appellees. The trial judge properly sustained the exception of prescription as the claim is prescribed even when the beginning of the running of prescription is evaluated in light of the standards set out by the supreme court in Griffin.
The judgment of the district court is affirmed at appellants' cost.
AFFIRMED.
NOTES
[1] The defendants are:

a) Loyd G. Whitley, M.D.,
b) Herbert B. Master, M.D.,
c) Robert S. Thornton, M.D.,
d) Heinz K. Faludi, M.D.,
e) Jorge Martinez-Leyva, M.D.,
f) Stephen P. Youngberg, M.D.,
g) L. Keith Mason, M.D.,
h) Mrunalin B. Shah, M.D., and
i) Abdul R. Ebrahim, M.D.
[2] LSA-R.S. 40:1299.47. Medical review panel

B(2)(a) A health care provider, against whom a claim has been filed under the provisions of this Part, may raise any exception or defenses available pursuant to R.S. 9:5628 in a court of competent jurisdiction and proper venue at any time without need for completion of the review process by the medical review panel.
[3] LSA-R.S. 9:5628. Actions for medical malpractice

A. No action for damages for injury or death against any physician, chiropractor, dentist, psychologist, or hospital duly licensed under the laws of this state, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
[4] During argument before the trial judge counsel discussed the applicable law. The trial judge observed that Griffin did not change the law as set out in the earlier case of Cartwright v. Chrysler Corp., 255 La. 597, 232 So.2d 285 (1970).

We do not think this is correct. Under Cartwright prescription began to run when a party acquired notice which should have excited his attention to inquire and discover the facts upon which his claim is based. However, under Griffin prescription does not begin to run until a party acquires knowledge of those facts unless his failure to know them is willful, negligent or unreasonable.
For these reasons it appears to us that the trial judge applied the excited attention test even though in his reasons for judgment he found appellants "had more than apprehension" which appears to track language in Griffin.