556 So.2d 221 (1990)
Charles MAUNG-U, et al., Plaintiffs/Appellants,
v.
Dr. James S. MAY, et al., Defendants/Appellees.
No. 21069-CA.
Court of Appeal of Louisiana, Second Circuit.
January 24, 1990.
Rehearing Denied February 22, 1990.
Writ Denied April 27, 1990.
*222 James R. Dawson, Frank S. Kennedy, Shreveport, for Charles Maung-U, et al. plaintiffs/appellants.
Lunn, Irion, Johnson, Salley & Carlisle by James B. Gardner, Shreveport, for Schumpert Memorial Medical Center, defendant/appellee.
Mayer, Smith & Roberts by Caldwell Roberts, Shreveport, for Dr. James S. May, defendant/appellee.
Before HALL, C.J., and MARVIN and HIGHTOWER, JJ.
HALL, Chief Judge.
Plaintiffs, Charles Maung-U and Beauty Maung-U, individually and on behalf of their minor daughter, Melody Maung-U, filed with the insurance commissioner a petition to impanel a medical review panel and for damages. Made defendants were Dr. James S. May and The Sisters of Charity of the Incarnate Word, d/b/a Schumpert Memorial Medical Center (Schumpert). Defendants petitioned the district court to dissolve the medical review panel pursuant to LSA-R.S. 40:1299.47 B.(2)(a)[1], alleging that plaintiffs' action had prescribed. A hearing on the exception of prescription was held in the district court and the court ruled in defendants' favor with well-considered and expressed written reasons for judgment. From a judgment sustaining the exception of prescription, dissolving the medical review panel, and denying plaintiffs' claims, plaintiffs appealed asserting that the district court erred in ruling that their claim had prescribed. We affirm.
Actions for medical malpractice prescribe one year from the date of the alleged act of malpractice or within one year from the date of the discovery of the alleged act. However, all actions must be brought within three years from the date of the alleged *223 act or they are forever barred. LSA-R.S. 9:5628.[2]
According to the plaintiffs' pleadings in this case, the alleged acts of malpractice occurred on or before the date of delivery of Melody Maung-U, July 29, 1982.[3] Their petition to impanel the medical review panel was filed on November 26, 1984, more than two years after the alleged acts of malpractice. Plaintiffs contend that they did not discover the facts upon which their cause of action is based at any time prior to seeking the advice of their attorney in September of 1984. They rely on the doctrine of contra non valentem agere nulla currit praescriptio to support their contention that prescription has not run in this case.
Beauty Maung-U was admitted to Schumpert about 1:00 a.m. in the early morning of July 29, 1982. The child was delivered by Dr. May, a board certified family medicine practitioner who is not a specialist in obstetrics-gynecology, at 11:27 p.m. that night. Upon delivery, the umbilical cord was tightly wrapped around the child's neck three times. The child suffered asphyxia at birth but was resuscitated by the Schumpert staff. She was immediately transferred to Schumpert's intensive care unit for recovery.
Almost immediately after the delivery, the plaintiffs were informed that their child was in critical condition due to complications in the delivery of the child. Mr. Maung-U called his sister, a neonatologist in California, and she in turn talked on the telephone with the neonatologist in Shreveport who was in charge of the baby's care while in intensive care. The doctors in charge of the child's care after delivery told the Maung-Us that the child had suffered an oxygen deprivation which could cause the child to suffer some brain damage. The Maung-Us were told that it was too early to tell the extent of the child's problems.
Mr. Maung-U testified that he saw Dr. May rush into the delivery room very late on the night of delivery. He stated that a nurse told him that the baby was almost here at about 9:30 p.m. but that he did not see Dr. May enter the delivery room until about 10:45 p.m. Mrs. Maung-U testified that the nurses in the delivery room were looking very nervous and that she could tell that something was wrong. She wondered why Dr. May was not there. Hospital records indicate that Dr. May was at the hospital somewhere between 10:20 p.m. and 10:40 p.m. on the night of delivery.
In the months that followed, the Maung-Us were informed by the treating physicians of the various problems and delays in development that the child was experiencing. The doctors were generally cautious about the child's prognosis but still optimistic. The Maung-Us were told that a better evaluation could be made only after the child reached certain milestones in her life referred to as landmarks. At certain ages children should begin to roll over, sit up, crawl, walk, speak, etc. The only way to tell how delayed this child's development would be was to wait for the landmark dates and see how the child responded.
Four months after Melody's delivery the Maung-Us took the child with them on vacation to California. While there they stayed with Mr. Maung-U's sister, Dr. Khin Swe Lay, the neonatologist. Dr. Lay had the child examined by a therapists. Dr. Lay stated in her deposition that she never *224 told her relatives that the child's injuries were due to malpractice or doctor error. However, Mrs. Maung-U stated in her deposition that Dr. Lay seemed mad about the care Melody had received and that Dr. Lay was mad because there was a delay in the delivery. Mr. Maung-U summarized the expressions of his sister in much the same way as his wife had done. He stated that Dr. Lay felt that "it should not have happened that way." Dr. Haynie, the child's pediatrician, testified that he felt like the Maung-Us were seeking the advice of Dr. Lay from early on based on discussions with the Maung-Us during office visits.
Further, Mr. Maung-U testified that he felt that something was wrong from the night of delivery. He did not think Dr. May should have been arriving so late. He could not point to other events after the night of delivery which may have sparked an awareness of a cause of action. Instead, he stated that he consulted a lawyer after he was advised of the permanency of Melody's condition and after conferring with friends. He stated that he was urged by most of his friends to consult a lawyer during discussions about Melody's condition.
The Maung-Us were well-aware that the child was not developing normally. In July of 1984, Melody was taken to Dr. Haynie for her two year check-up. It was during this visit that Dr. Haynie informed the Maung-Us that Melody had cerebral palsy and that her condition was permanent. The Maung-Us consulted an attorney after this visit and the petition for the medical review panel was filed in November of 1984.
The rule of prescription in LSA-R.S. 9:5628 is subject to the discovery rule embodied in the doctrine of contra non valentem agere nulla currit praescriptio, when that doctrine is invoked to suspend the running of prescription during the period in which the cause of action was not known by or reasonably knowable to the plaintiff. Griffin v. Kinberger, 507 So.2d 821 (La. 1987); Poole v. Physicians and Surgeons Hospital, 516 So.2d 1185 (La.App.2d Cir. 1987); Welch v. St. Francis Medical Center, Inc., 521 So.2d 758 (La.App.2d Cir. 1988).
The one year prescriptive period commences running on the date in which the injured party discovers or should have discovered the facts upon which his cause of action is based. Griffin v. Kinberger, supra; Chandarlis v. Shah, 535 So.2d 895 (La.App.2d Cir.1988); Poole v. Physicians and Surgeons Hospital, supra. Constructive knowledge sufficient to commence the running of prescription, however, requires more than a mere apprehension that something might be wrong. Cordova v. Hartford Accident and Indemnity Co., 387 So.2d 574 (La.1980); Chandarlis v. Shah, supra; Poole v. Physicians and Surgeons Hospital, supra. Prescription does not run against one who is ignorant of the facts upon which his cause of action is based, as long as such ignorance is not willful, negligent or unreasonable. Young v. Clement, 367 So.2d 828 (La. 1979); Chandarlis v. Shah, supra; Poole v. Physicians and Surgeons Hospital, supra. Thus, even if a malpractice victim is aware that an undesirable condition developed at some point in time after the medical treatment, prescription does not run as long as it was reasonable for the victim not to recognize that the condition may be related to treatment. The proper focus is on the reasonableness of the tort victim's action or inaction. Griffin v. Kinberger, supra; Chandarlis v. Shah, supra; Poole v. Physicians and Surgeons Hospital, supra.
Plaintiffs argue that at no time prior to consulting their attorney did they obtain knowledge that the injuries to their child were treatment related. They knew of the complications in their daughter's delivery, such as Mrs. Maung-U's preeclampsia, the lack of oxygen to the child, and the umbilical cord problem. They also knew that the problems associated with the delivery caused their child to suffer some brain damage. However, they argue that they did not relate these problems to negligent treatment by Dr. May or the hospital. Plaintiffs' argument relies heavily on the fact that no one, or at least no medical or *225 legal professional, stated that the condition of their daughter was treatment related.
LSA-R.S. 9:5628 refers to "discovery of the alleged act, omission, or neglect," but the cases cited above have not required actual knowledge of negligent or improper treatment in order for prescription to begin running. Although the "notice enough to excite attention ... and call for inquiry" rule of Cartwright v. Chrysler Corporation, 255 La. 597, 232 So.2d 285 (1970), has been limited and redefined in later cases, "constructive" knowledge, as opposed to "actual" knowledge, is still recognized as the starting point of the prescriptive period. As stated in Griffin, the focus is on the reasonableness of the inaction by the plaintiff. The rule is whether the cause of action was known or reasonably "knowable" by the plaintiff. The cases refer to facts the plaintiff "should have discovered." Prescription does not run only as long as it is reasonable for the plaintiff not to recognize that the condition "may" be related to treatment. When a plaintiff has knowledge of facts strongly suggestive that the untoward condition or result may be the result of improper treatment and there is no effort by the health care providers to mislead or cover up information which is available to plaintiff through inquiry or professional medical or legal advice, then the facts and cause of action are reasonably knowable to the plaintiff. Inaction by the plaintiff for more than a year under such circumstances is not reasonable.
The essential facts alleged in plaintiffs' original petition filed with the insurance commissioner are that Dr. May was advised of Mrs. Maung-U's arrival at the hospital, that he failed to arrive at the hospital in time to properly deliver the baby despite knowing that labor and delivery was proceeding abnormally, that hospital personnel knew of the abnormal labor and delivery and failed to take proper action to proceed with the delivery, that the baby's head was visible for an abnormally long time during labor without delivery being completed and that the hospital staff had knowledge of such, that upon delivery the baby had its umbilical cord wrapped around its neck, and that the baby was born with brain damage due to the failure of the doctor and hospital to deliver proper medical care during labor and delivery.
Virtually all of the facts alleged in the plaintiffs' first petition to impanel a medical review panel were known to the plaintiff on or shortly after the night of delivery. In an amended petition apparently intended to counter the exception of prescription the plaintiffs alleged that it was not until they knew the condition of their daughter would be permanent that they knew that the condition was treatment related. This allegation is not based upon some new fact which would cause plaintiff to logically relate the condition to treatment. Permanency of the condition does not show a relationship of the condition to treatment. See Percy v. State, E.A. Conway Memorial Hospital, 478 So.2d 570 (La.App.2d Cir.1985). Plaintiffs do not seriously pursue this point on appeal. They argue, instead, that they did not discover the alleged acts of malpractice until after they consulted an attorney. Still, no specific acts of omission or neglect other than those alleged in their petition as amended are set forth in the pleadings or briefs.
The plaintiffs in this case knew on the night of delivery most of the events that they allege were malpractice. Mr. Maung-U stated that he has felt ever since the night of delivery that Dr. May should not have been arriving so late. Mr. Maung-U's sister, a neonatologist, was upset about the care the child had received. Although Dr. Lay testified that she never said that Dr. May had committed malpractice, Mrs. Maung-U stated that Dr. Lay was "mad because of delays in delivery."
At no time did the medical care providers in this case mislead the plaintiffs. From the beginning, the plaintiffs were aware of and informed about the problems of delivery and the possible consequences. The plaintiffs knew from the outset that their child would likely have problems and that the determination of the severity of injury could only be made with the passage of time.
Mr. Maung-U stated that friends advised him to see an attorney over a year before *226 his deposition was taken in November, 1985. He stated that their urging contributed in part to his decision to seek legal advice.
Given the facts of this case, we cannot say that plaintiffs were reasonable in failing to bring their action for over two years from the night of delivery. They knew virtually all of the facts surrounding the delivery of their child and possible consequences of the problems experienced therein. They were in regular communication with Mr. Maung-U's sister, an experienced neonatologist, about the condition and care of Melody. Plaintiffs may not have known all the detailed medical facts surrounding Mrs. Maung-U's labor and delivery until after they consulted a lawyer, took depositions, and the like, but they knew enough to have more than a mere apprehension that the condition of their child might relate to improper treatment. Their failure to make further inquiry or consult medical or legal professionals to gain knowledge of additional facts for more than two years was not reasonable. They had readily available to them the advice and counsel of Mr. Maung-U's sister, a specialist in the area. Lack of knowledge of facts supporting their cause of action, if such facts exist, was due to their own neglect. The cause of action and supporting facts were known or reasonably knowable to the plaintiffs early on and more than a year before they filed their claim with the insurance commissioner.
For these reasons, the judgment sustaining the exception of prescription, dissolving the medical review panel, and dismissing plaintiffs' claims, is affirmed at appellants' costs.
AFFIRMED.

ON APPLICATION FOR REHEARING
Before HALL, MARVIN, HIGHTOWER, FRED W. JONES, Jr. and LINDSAY, JJ.
Rehearing denied.
NOTES
[1] LSA-R.S. 40:1299.47 B.(2)(a):

A health care provider, against whom a claim has been filed under the provisions of this part, may raise any exception or defenses available pursuant to R.S. 9:5628 in a court of competent jurisdiction and proper venue at any time without need for completion of the review process by the medical review panel.
[2] Actions for medical malpractice.

A. No action for damages for injury or death against any physician, chiropractor, dentist, psychologist, or hospital duly licensed under the laws of this state, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
B. The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts.
[3] The pleadings, briefs and the trial court's opinion refer in several instances to the date of delivery being September 29, 1982. However, it seems clear from the depositions that the correct date is July 29, 1982. For purposes of this opinion, the precise date is not important.