687 So.2d 120 (1996)
Lynn B. GASSEN,
v.
EAST JEFFERSON GENERAL HOSPITAL, Robin Roe, and Dr. Thomas O. Adams, D.D.S.
No. 96-CA-590.
Court of Appeal of Louisiana, Fifth Circuit.
December 30, 1996.
Rehearing Denied February 18, 1997.
*122 Robert W. Stratton, Baton Rouge, for Plaintiff/Appellant, Lynn B. Gassen.
James E. Hritz, Margaret M. Collett, Legal Services Division, East Jefferson General Hospital, Metairie, for Defendant/Appellee, East Jefferson General Hospital.
Joseph M. Messina, Diane Tonagel, Lobman, Carnahan and Batt, Metairie, for Defendants/Appellees, Allied Pharmacy Service, Inc. and North River Insurance Company.
Peter E. Sperling, Frederick T. Greschner, Jr., Frilot, Partridge, Kohnke & Clements, New Orleans, for Defendant/Appellee, Thomas O. Adams, D.D.S.
Before BOWES, GOTHARD and CANNELLA, JJ.
BOWES, Judge.
Plaintiff, Lynn B. Gassen, appeals from a judgment granting exceptions of prescription filed by all defendants and dismissing her cause of action. For the following reasons, we affirm the decision of the trial court.

PROCEEDINGS
On April 9, 1988, Mrs. Gassen underwent jaw surgery for TMJ syndrome. Post-surgery she was given an injection of Vibramycin, an antibiotic drug. Mrs. Gassen contends that the antibiotic was incorrectly administered, in that she was given an intramuscular injection in her hip, when Vibramycin is only to be given intravenously. Mrs. Gassen further contends that she has a mass in the area, suffers pain, swelling and nerve damage, and a disability as a result.
Mrs. Gassen filed a Complaint for Medical Review Panel with the Commissioner of Insurance on May 8, 1989 and, on June 20, 1991, the panel issued an opinion finding that "the evidence does not support the conclusion that the defendants ... failed to meet the applicable standard of care[.]"
Accordingly, plaintiff initiated this suit on September 3, 1991 against East Jefferson General Hospital, Robin Roe, R.N. and Dr. Thomas Owens, D.D.S. Allied Pharmacy was initially made a third-party defendant by East Jefferson Hospital, and was subsequently made a defendant by supplemental petition filed by plaintiff. Plaintiff's husband was then added as a plaintiff in the suit to allege a claim for loss of consortium.
All defendants filed exceptions of prescription, which were heard by the trial judge on November 17, 1995. Ms. Gassen and her family practitioner, Dr. Michael Owen, testified at that hearing.
On November 28, 1995, the trial court rendered judgment, without reasons, finding that plaintiff's claim had prescribed. Plaintiff filed a motion for new trial and/or reconsideration which was denied, with reasons, by the trial court on March 14, 1996.
In his reasons for judgment denying plaintiff's motion, the trial judge referred to the testimony presented at the November 17th hearing, stating that:
The court was favored with live testimony from Ms. Gassen in which the court felt that she had much more experience than the average licensed practical nurse. She stated in her own testimony that she knew that something was terribly wrong at the time of the injection, even though she was not aware, pharmaceutically, what exactly was wrong.
* * * * * *
This court believes that Hutton v. Craighead, [530 So.2d 101 (La.App. 4th Cir. 1988) ] is distinguished from the case at bar because in the Hutton case the plaintiff had just a "mere apprehension that something was wrong" whereas in the present case Ms. Gassen knew immediately, at the time of the injection, that something was terribly wrong. The court believes that Ms. Gassen was put on notice at the time of the allegedly negligent injection that she may have a claim for medical malpractice.
*123 Plaintiff has appealed from the judgment granting the exception of prescription.

ANALYSIS
Medical malpractice claims must be brought within one year from the alleged malpractice or one year from the discovery of the malpractice. La. R.S. 9:5628.
In this case, plaintiff received the injection of Vibramycin on April 9, 1988. She filed her claim for Medical Review Panel on May 8, 1989, more than one year after the alleged malpractice and, therefore, her suit is, on its face, prescribed.
In Rayne State Bank and Trust Co. v. National Union Fire Ins. Co., 483 So.2d 987, 995 (La.1986), the Louisiana Supreme Court said:
Mere notice of a wrongful act will not suffice to commence the running of the prescriptive period. The reason is clear. In order for the prescriptive period to commence, the plaintiff must be able to state a cause of actionboth a wrongful act and resultant damages. Because the damage must necessarily occur after the wrongful act, prescription runs from that point and not from the date of the wrongful act. See Owens v. Martin, 449 So.2d 448 (La.1984), reaffirming Jones v. Texas & Pacific Ry. Co., 125 La. 542, 51 So. 582 (1910).

* * * * * *
As this court stated in Jones v. Texas & Pacific Ry. Co., supra at 583:
A damage can be considered to have been sustained ..., only when it has manifested itself with sufficient certainty to be susceptible of proof in a court of justice.
Appellant argues that she became aware of a possible claim on May 28, 1988 when she visited Dr. Michael Owen, her family practitioner, and was told that the Vibramycin was incorrectly administered and, therefore, her suit was timely, having been filed within one year of that date. Appellees allege that Mrs. Gassen should have become aware of the claim almost immediately after receiving the shot, and by her own admission, she knew something was terribly wrong at that time.
This Court, in Dufriend v. Tumminello, 590 So.2d 1354, 1356 (La.App. 5 Cir. 1991) discussed what constitutes sufficient notice to start the running of prescription:
The one-year prescriptive period begins to run on the date the injured party discovers or should have discovered the facts upon which the cause of action is based. Griffin v. Kinberger, 507 So.2d 821 (La.1987). Constructive knowledge sufficient for prescription to commence is, however, more than mere apprehension that something is wrong. Griffin v. Kinberger, Id. Prescription does not begin to run against a party who is ignorant of the pertinent facts, as long as the ignorance is not willful, negligent or unreasonable. Griffin v. Kinberger, Id.; Maung-U v. May, 556 So.2d 221 (La.App. 2nd Cir. 1990). Thus, prescription does not commence even when an undesirable condition develops some time following medical treatment if it was reasonable for the victim not to have recognized that the condition may have been related to the treatment. Griffin v. Kinberger, supra; Maung-U v. May, supra.

On the other hand, when the facts show the injured party "had knowledge of facts strongly suggestive that an untoward condition or result may be the result of improper treatment and there is no effort by health care providers to mislead or cover up information which is available to plaintiff through inquiry or professional medical or legal advice, then the facts and cause of action are reasonably knowable to the plaintiff' for purposes of the one year prescriptive period; plaintiff's inaction for more than one year under such circumstances is not reasonable. Maung-U v. May, Id. at 225. Further, when the plaintiff's claim is prescribed on its face, the plaintiff has the burden of proof to rebut the exception of prescription. Blanchard v. Reeves, 469 So.2d 1165 (La.App. 5 Cir. 1985).
... Ignorance of the probable extent of injuries materially differs from ignorance of actionable harm, which delays commencement *124 of prescription. Percy v. State of Louisiana, 478 So.2d 570 (La.App. 2nd Cir.1985).
[Emphasis added].
Furthermore, the Second Circuit in Harlan v. Roberts, 565 So.2d 482, 486 (La.App. 2 Cir.1990) noted that:
A review of the jurisprudence dealing with prescription in medical malpractice indicates that each case must be decided on its own peculiar facts. The law does not require that a patient be informed by an attorney he has a medical malpractice action before prescription begins to run. Likewise, it is not a requirement that a patient be informed by a medical practitioner of possible malpractice before prescription will begin to toll. The court may take into consideration such factors as the patient's educational background, intelligence and past experience with medical procedures in assessing whether or not he had knowledge. Lambert v. Metrailer, 485 So.2d 69 (La.App. 1st Cir.1986), writ denied, 488 So.2d 1023 (La.1986).
In this case, Ms. Gassen, herself, testified at the hearing on the exceptions of no cause of action that when she received the injection she felt horrible burning pain, causing her to scream into her pillow. She thought something was wrong because the area of the shot "hurt so much." She testified that, at the time of the administration of the shot, she was a licensed practical nurse who was pursuing additional education, and that she had been taught to give intramuscular injections. She also testified that if she had injected a patient, and the patient had reacted in the same manner, she would have summoned a physician.
Ms. Gassen also testified that she refused an injection the next day because her leg still hurt, and that she took some of her husband's pain killers because the hospital would not give her any. Her leg continued to hurt for a month after the injection, prompting her to seek medical treatment.
When a party has sufficient information to incite curiosity, to excite attention, or to put a reasonably minded person on guard and call for inquiry, he has the constructive knowledge necessary to start the running of prescription. White v. Willis-Knighton Medical Center, 25,575 (La.App. 2 Cir. 2/23/94), 632 So.2d 1198, 1199.
After considering the testimony of Ms. Gassen, the trial court concluded that the plaintiff had more than a "mere apprehension" that something was wrong; she was put on notice that the Vibramycin was improperly administered at the time of the injection by her own admission that she knew that something was terribly wrong, and that faced with a similar reaction from one of her patients, she would have called a doctor. Accordingly, we cannot say that the trial court was clearly wrong in finding that prescription began to run at that time and had accrued before plaintiff filed her malpractice claim.
For the above discussed reasons, the judgement of the trial court dismissing plaintiff's suit is affirmed. All costs are assessed against plaintiff/appellant.
AFFIRMED.