JiDUFRESNE, Judge.
This is an appeal by Vera Apken from a judgment sustaining an exception of prescription urged by defendants, Dr. Kenneth Kushner d/b/a The Heart Clinic of Louisiana, et al., in this medical malpractice matter. For the following reasons, we affirm that judgment.
The pertinent facts are as follows. On April 10, 1994, Walter Apken, Vera’s husband, severely bruised his leg when he fell down in a chartered bus during a sudden stop. A week later, on April 18, he saw Dr. Robert Murphy, an internist, for this injury. On April 19, he appeared at the emergency room of West Jefferson Medical Center complaining of chest pains. He was admitted to the hospital for treatment for heart problems, but died five days later of what the death certificate identified as congestive heart failure. The names of Doctors Robert Hallett and Kenneth Kushner, both of The Heart Clinic of Louisiana, appear in the records of this treatment. No autopsy was performed.
Vera consulted Davy Laborde, an attorney, about various insurance band legal matters arising from her husband’s death, including her potential rights relating to the bus accident. Laborde contacted Dr. Murphy to inquire about the nature of Walter’s injuries on the bus and whether those injuries might have been related to his subsequent death. Laborde represents that Dr. Murphy’s opinion was that the bruise on the leg could very well have produced blood clots which in turn could have traveled to the heart and contributed to the heart failure.
Upon receiving that information, Laborde telephoned The Heart Clinic in an effort to speak to either Dr. Hallett or Dr. Kushner about the cause of death. Laborde stated at the hearing in this matter that at the time he was trying to establish causation between the bus accident and the death in conjunction with Vera’s action against the bus company. He said that he simply wanted to have these doctors consider Dr. Murphy’s theory that the blood clots from the bruise were contributing factors in the death, and amend the death certificate to so reflect if they agreed with that theory. He further stated that it was not until he took the depositions Drs. Hallett and Kushner in September and November of 1996 that he discerned that Walter’s hospital treatment was possibly deficient. On February 18, 1997, within a year of those depositions, Laborde filed a request for a medical review panel to inquire into possibly negligent treatment during Walter’s hospital stay.
Pursuant to La. R.S. 40:1299.47 B(2)(a), the doctors urged an exception of prescription in the district court, asserting that because the request for a medical review panel was filed over one year from the date of treatment, the one year prescriptive period *1240 of La. R.S. 9:5628, barred continuation of that panel. Claimant urged, to the contrary, that she did not ^discover the possible malpractice until the depositions of September and November of 1996, and therefore that her request for a panel was timely under the three year prescriptive period of that same statute. After a hearing on March 31, 1998, the trial judge found that claimant was on notice in early 1994, that something may have been wrong with the treatment, and that her request for the medical review panel in February, 1997, was outside the one year period from date of treatment and was thus prescribed. She now appeals that judgment.
At the hearing on the exception, the doctors called Ms. Melanie Becnel, a cardiovascular technologists who worked in that capacity at The Heart Clinic of Louisiana, and also served as the clinic’s legal liaison. She testified that she first spoke to Laborde by phone in August of 1994. She said that he told her he had been trying to contact Drs. Hallett and Kushner about Dr. Murphy’s hypothesis about the cause of death, but neither of them had returned his calls. She informed him that Dr. Hallett was no longer with the clinic, but that she would pull the appropriate charts and review the issue. She testified that she did retrieve the records, and those from the hospital disclosed that Dr. Murphy’s blood clot theory had been specifically ruled out during treatment. She subsequently told Laborde what she had found in the records, and indicated to him that he should procure those records. She informed him in writing in September of the cost of the records, but said that she never received payment. Finally, sometime in November she again spoke to Laborde by phone. She said he told her then that he thought the doctors were going to help him, but since they had not, he guessed he would have “to sue everybody.” That was her last contact with Laborde.
_||Laborde, for his part, represented at the hearing that the only interest he had in speaking to these doctors involved the question of whether he could tie the death in with the bus accident. He further represented that he was unable to arrange their depositions until the fall of 1996, over a year after the death, and it was only during those depositions that he learned that there were to his mind suspicious circumstances surrounding Walter’s last treatment and death. Among the circumstances which struck him as odd were that the death certificate shows Dr. Hallett as the treating physician, but the illegible physician’s signature was determined to be that of Dr. Kushner. He also contended that these doctors gave conflicting testimony as to which of them actually treated Walter, and who was present at his death. In brief here he quotes several excerpts from the depositions which are allegedly contradictory.
In regard to prescriptive periods for medical malpractice claims, La. R.S. 9:5628, provides pertinently:
No action [for malpractice] ... shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; ...
In Dufriend v. Tumminello, 590 So.2d 1354 (La. App 5th Cir.1991), this court noted that the statute has generally been interpreted to mean that the second one year period begins when the claimant either discovered, or should have discovered, the alleged malpractice. Further, when a defendant urges an exception of prescription, his burden is simply to show that the claim has prescribed on its face; on that showing the opposing party must then come forward with evidence to show that prescription has not run or has been interrupted or suspended, Gassen v. East Jefferson General Hospital, 96-590 (La.App. 5th Cir. 12/30/96), 687 So.2d 120.
In the present matter, the request for a medical review panel was filed more than one year from the date of last treatment and thus was prescribed on its face. It was then incumbent on claimant to show that she had only discovered the alleged malpractice at a later date. The problem with claimant’s evidence of record is that it does not show what acts, omissions, or neglect on the part of the doctors was purportedly discovered by her. As best we can make out, the general allegation is that Walter may have been neglected *1241 while hospitalized. However, it can hardly be said that a mere suspicion that some omission might have occurred can constitute discovery of facts which would trigger application of the additional one year prescriptive period provided by the statute. In this circumstance, we can only conclude that claimant failed to show that her claim was not prescribed. The trial judge was thus correct in sustaining the exception of prescription and we therefore affirm that judgment.
For the foregoing reasons, the judgment sustaining the exception of prescription is hereby affirmed.

AFFIRMED.