793 So.2d 275 (2001)
Donna R. CREIGHTON, Plaintiff-Appellant,
v.
J. Bruce BRYANT and George R. Massie, Defendant-Appellee.
No. 34,893-CA.
Court of Appeal of Louisiana, Second Circuit.
June 20, 2001.
*276 The Allison Law Firm, Inc. by William T. Allison, Shreveport, Counsel for Appellant.
Cook, Yancey, King & Galloway by Herschel E. Richard, Jr., Counsel for Appellee.
Before BROWN, STEWART and CARAWAY, JJ.
CARAWAY, J.
This legal malpractice case raises the issue of when the plaintiff should have discovered her attorney's negligent actions for purposes of the running of the one-year period of peremption under La. R.S. 9:5605. After a trial of the defendant's peremptory exception for prescription, the trial court determined that over one year had passed after plaintiff received information from her second attorney which was sufficient to alert her to the defendant's malpractice. Finding no manifest error in the trial court's ruling, we affirm the court's grant of the exception and the dismissal of plaintiff's suit.

Facts and Procedural History
Donna R. Creighton ("Creighton") filed this petition for damages against J. Bruce Bryant ("Bryant") and George R. Massie ("Massie") on March 22, 1999, alleging professional negligence arising out of Bryant's legal representation of her in divorce proceedings she instituted against her husband, Leland F. Vines, Jr. ("Vines"), on September 12, 1997. Bryant filed a peremptory exception of prescription/preemption based on the tolling of the one year prescriptive period under La. R.S. 9:5605. After deposing Creighton and D.G. Tyler ("Tyler"), the attorney who ultimately secured her judgment of divorce, Bryant's exception of prescription was submitted on the basis of that testimony.
Creighton's attorney-client relationship with Bryant began after she saw his advertisement in the yellow pages and called his law office sometime in August, 1997. She made an appointment and subsequently visited the office, where she met with *277 Massie[1] to request an uncontested divorce. Subsequently, Bryant filed a Petition for Divorce, Child Custody and Support, Alimony Pendente Lite, Dissolution of the Community and Rule to Show Cause on September 12, 1997. The petition requested joint custody of the two minor children (Michelle and Rachel, then ages 7 and 4) with Creighton being designated the domiciliary parent. Thereafter, Vines answered Creighton's petition, also requesting joint custody and designation as the domiciliary parent. The matter was set for hearing on October 1, 1997.
Creighton appeared at the hearing on October 1, 1997, without Bryant. The day before, Massie had told her Bryant was out of town and would not be in court. Vines appeared with his lawyer. When Creighton told the trial judge that her attorney was not present in court, he instructed Creighton to go and call her lawyer. After calling Massie, Creighton returned to the courtroom and advised the trial judge that Bryant was out of town. The judge continued the hearing until the next morning. After leaving the courthouse, Creighton phoned Massie again and he advised her that Bryant, whom she had never met, would find her the next morning at the courthouse 30 to 45 minutes before the hearing. The next day, Bryant appeared in court five minutes before the hearing, tried unsuccessfully to continue the case and ultimately obtained Creighton's consent to the judgment awarding joint custody of the two girls to the parties, designating the parents as co-domiciliary parents, and ordering that neither party would pay child support to the other. Creighton testified at her deposition that Bryant told her it was a temporary order.
In November, 1997, Creighton received Bryant's bill for legal fees in the amount of $1,281.25. After Bryant would not return her phone calls, Creighton sought advice from Tyler on December 17. She discussed with Tyler the finalization of the divorce, the custody arrangement and her dissatisfaction with Bryant's representation. Tyler advised her that she could file a complaint with the Office of Disciplinary Counsel for the bar association regarding Bryant's representation. Such complaint was eventually filed on April 16, 1998. The present suit for legal malpractice was instituted on March 22, 1999, which the trial court determined was untimely.

Exception of PrescriptionStandard of Appellate Review
When the peremptory exception of prescription is pleaded before the answer, it shall be tried and decided in advance of the trial of the case. La. C.C.P. art. 929(A). On the trial of a peremptory exception pleaded prior to the trial of the case, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition. La. C.C.P. art. 931. When evidence has been introduced, the court is not authorized to accept the plaintiff's allegations as true. Schoen v. Walling, 31,598 (La.App. 2 Cir. 2/24/99), 728 So.2d 982, 985. When evidence is received on the trial of the peremptory exception, the factual conclusions of the trial court are reviewed by the appellate court under the manifest error-clearly wrong standard as articulated in Stobart v. *278 State Through Dept. of Transp. and Development, 617 So.2d 880 (La.1993). Masters v. Fields, 27,924 (La.App. 2 Cir. 1/24/96), 666 So.2d 1333. If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed evidence differently. Stobart, 617 So.2d at 882, 883.

Discussion
Prescription on claims for legal malpractice is governed exclusively by La. R.S. 9:5605 which provides, in pertinent part, as follows:
A. No action for damages against any attorney at law duly admitted to practice in this state, ... whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
B .... The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.
In Cardneaux v. Dollar, 31,718 (La.App. 2 Cir. 3/31/99), 731 So.2d 928, we summarized the Louisiana Supreme Court's review of this malpractice statute as follows:
The recent opinion of our supreme court in Reeder v. North, 97-0239 (La.10/21/97), 701 So.2d 1291, provides primary guidance for the interpretation of this statute which was first enacted in 1990. The court in Reeder strictly applied the statutory language specifying "the date of the alleged act, omission, or neglect" as the triggering event for the running of the three-year period of limitation. In so ruling, the court determined that the so-called "continuous representation rule" of the pre 1990 jurisprudence did not apply to delay the three-year peremption. Additionally, the court's ruling effectively rejected the former realization of damages analysis applied in pre 1990-settings. Id. at 1298. Under that earlier analysis, the courts fixed the running of prescription, not from the time of the negligent act of malpractice, but from the time that "appreciable and actual harm" began to flow to the client in an underlying action where the malpractice of the attorney is used by the opposing litigant to defeat the client's suit. Brand v. New England Ins. Co., 576 So.2d 466 (La.1991).
In Reeder, the supreme court recognized the attorney's act of filing the client's suit in federal court and his negligent failure to include certain state law claims as the critical event for operation of the statute. On that date, although the client obviously did not know of his attorney's negligence and no appreciable harm may have immediately occurred, the three-year peremptive period began. Although Reeder specifically addressed only the application of the three-year limitation, the same statutory "date of the alleged act, omission, or neglect" triggers the running of the one-year period of peremption assuming the client *279 can immediately recognize that the act of malpractice occurs. In the more typical setting where the client's discovery of the act of malpractice occurs at a later date, the one-year limitation only begins to run from date of discovery but in any event, the date of discovery by the client or whether the malpractice is discovered at all does not prevent the running of the three-year peremptive period.
In this case, all of the alleged negligent actions of malpractice occurred in October, 1997. Those critical events commenced the running of the three-year peremptive period which did not accrue since suit was filed seventeen months later on March 22, 1999. Likewise, the same events could have commenced the running of the one-year period of peremption in October, 1997, unless it is shown that the one-year peremptive period commenced at a later date under the statute's discovery rule. The trial court specifically found that Creighton "discovered or should have discovered malpractice by Bryant" by the time of her first meeting with Tyler in December, 1997. From our review of the evidence, the trial court could reasonably conclude that discovery occurred or should have occurred at that time. Accordingly, we find no manifest error in its determination of the facts.
The acts of malpractice alleged in the petition can be summarized as follows: (i) the attorney's failure of preparation for the October 2 court proceedings, (ii) the attorney's failure to obtain for the benefit of Creighton, domiciliary parent status with longer periods of custody of the children, (iii) the attorney's failure to obtain monthly child support payments, and (iv) the attorney's misinforming Creighton that the court's initial judgment regarding custody and child support was an interim order that could be changed at any time. The related damages alleged in the petition are for emotional distress suffered by Creighton from her loss of custody with her children and the amount of lost child support. Creighton testified that it was not until early 1999, when she talked with a third attorney[2] about obtaining a change in custody and child support, that she first knew that Bryant's failures listed above had damaged her and amounted to malpractice. She also claims that she discovered from the attorney that the initial judgment was not an interim ruling and may be difficult to change.
Accepting Creighton's testimony that she did not completely understand the legal ramifications of Bryant's representation until 1999, the issue becomes whether she should have discovered Bryant's malpractice earlier. In considering when she should have discovered the alleged malpractice, the jurisprudence interpreting the discovery rule for medical malpractice claims under La. R.S. 9:5628 is instructive.[3] Instances of malpractice in both professions sometimes cause undesirable conditions which the client does not relate to an act of negligence. Discussing the one-year period of prescription for medical malpractice in Griffin v. Kinberger, 507 So.2d 821 (La.1987), the court stated:
The one-year prescriptive period commences running on the date the injured *280 party discovers or should have discovered the facts upon which his cause of action is based. Lott v. Haley, 370 So.2d 521 (La.1979). Constructive knowledge sufficient to commence the running of prescription, however, requires more than a mere apprehension that something might be wrong. Cordova v. Hartford Accident & Indemnity Co., 387 So.2d 574 (La.1980). Prescription does not run against one who is ignorant of the facts upon which his cause of action is based, as long as such ignorance is not willful, negligent or unreasonable. Young v. Clement, 367 So.2d 828 (La.1979). Thus, even if a malpractice victim is aware that an undesirable condition developed at some point in time after the medical treatment, prescription does not run as long as it was reasonable for the victim not to recognize that the condition may be related to the treatment.
Id. at 823.[4]
In Maung-U v. May, 556 So.2d 221 (La.App. 2 Cir.1990), writ denied, 559 So.2d 1385 (La.1990), the physician's late arrival to the delivery room, which was alleged as malpractice, was noticed by both of the parents of a child who developed cerebral palsy from complications in the delivery. The parents later discussed the doctor's actions with the father's sister, a neonatologist, who felt that the child's delivery was mishandled but who denied telling the parents that the child's condition was due to malpractice. After two years, when the child's condition was diagnosed as permanent and legal advice was obtained, the parents filed suit against the doctor. In affirming the trial court's grant of the exception of prescription, this court concluded that "[p]laintiffs may not have known all the detailed medical facts surrounding Mrs. Maung U's labor and delivery until after they consulted a lawyer, took depositions, and the like, but they knew enough to have more than a mere apprehension that the condition of their child might relate to improper treatment." Id. at 226.
In the present case, when Creighton sought the representation of Tyler in December 1997 and January 1998, she knew of and was disgusted with Bryant's unpreparedness and non-responsiveness concerning her separation and related custody issues. She had refused payment of his legal fees and sought a new attorney. She was not satisfied with the amount of time her children were in her custody, and she knew that she was not receiving child support. Nevertheless, she consulted Tyler primarily for the purpose of obtaining a divorce decree when the six-month waiting period for divorce ended. She also discussed with Tyler the procedure for filing a complaint with the bar for Bryant's grossly unprofessional conduct in his preparation for the October hearing and his failure to consult with Creighton thereafter.[5]
Creighton's assertion that Bryant misinformed and misled her concerning her ability to freely alter the custody arrangement and child support does support the *281 view that she was initially unaware of the harm which Bryant's actions had caused her. Nevertheless, the trial court could conclude from Tyler's testimony that the spell which Bryant's misrepresentation cast upon Creighton should have ended when Tyler discussed the custody and support matters with her. In reviewing his notes of his first two meetings with Creighton in December 1997 and January 1998, Tyler testified that he discussed with her the importance of her plans after her remarriage to establish her residence in the district where the children were attending school prior to pursuing a change in custody. From his notes of the January conversation, Tyler observed that he made a rough calculation of child support, assuming the approximate gross income of both parties. Given Vines' larger income, any estimate of the child support obligation would reveal that Creighton was entitled to a significant payment if designated as domiciliary parent. Thus, it is clear from Tyler's testimony and from the subsequent court proceedings under his representation that Creighton's primary focus was for her divorce in May 1998, not for the immediate alteration of the custody matters. Tyler, nevertheless, gave appropriate advice regarding Creighton's rights to pursue altered custody and to obtain child support. The importance of that advice was enough to dispel Creighton's understanding received from Bryant and to allow recognition that the inadequacy of Bryant's representation had deprived her of the full enforcement of her rights and would make it more difficult to alter the custody arrangement in future court proceedings.
In summary, Creighton sought Tyler's advice regarding her divorce and not regarding the issue of Bryant's possible negligence. Yet, incidental to Tyler's counsel, she received information indicating that the custody issues were not decided merely on an interim basis and that a significant child support award was denied her. Nevertheless, she was content to allow the unsatisfactory custody and support rulings to remain unchallenged until after her remarriage, her subsequent pregnancy and the birth of another child. Under these circumstances, the trial court could conclude that she had received enough information from Tyler to make it unreasonable to fail to recognize that the custody situation and her lack of child support payments were related to Bryant's insufficient representation.
The trial court's grant of Bryant's exception of prescription is affirmed. Costs of appeal are assessed to appellant.
AFFIRMED.
NOTES
[1] The trial court's reasons for judgment state that although Creighton thought George Massie was a lawyer, he is not. Creighton did not learn that Bryant was her lawyer and that Massie "didn't go to court under any circumstances" until the day before the hearing on the rule filed by Bryant. The record does not disclose whether Massie has ever been licensed to practice law or not. Service of Creighton's petition was never effected on Massie.
[2] At the time Tyler obtained the divorce for Creighton in May 1998, she postponed seeking a rule for a change in custody and child support. When she approached Tyler in January, 1999, his schedule prevented him from assisting her, and she obtained the services of a third attorney.
[3] Although the medical malpractice statute provides that its one-year period after discovery is a period of prescription and not a one-year peremption, the Louisiana Supreme Court in Reeder noted that the two statutes are analogous in some respects. Reeder v. North, 701 So.2d at 1296.
[4] The standard of reasonableness articulated in Griffin has been applied in legal malpractice cases. See, Carroll v. Wolfe, 98-1910 (La.App. 1 Cir. 9/24/99), 754 So.2d 1038; Ledbetter v. Wheeler, 31,357 (La.App. 2 Cir. 12/9/98), 722 So.2d 382.
[5] Creighton assigns as error the trial court's refusal to consider the contents of her complaint to the bar association which she filed against Bryant in April 1998. The court held that such allegations are privileged. We pretermit discussion of the privilege issue since we assume for purposes of our view of the evidence that Creighton's complaint to the bar association, which she first discussed with Tyler in December 1997, asserted only the details of Bryant's tardy and unprofessional court appearance on October 2, 1998 and his failure to communicate with Creighton thereafter without relating such conduct to the damages she now asserts in this action.