387 So.2d 574 (1980)
Raymond CORDOVA
v.
HARTFORD ACCIDENT & INDEMNITY COMPANY and Dr. A & Dr. B.
No. 66585.
Supreme Court of Louisiana.
June 23, 1980.
Rehearing Denied September 12, 1980.
Edwards, Stefanski & Barousse, Homer Ed Barousse, Jr., Crowley, for plaintiff-applicant.
Landry, Watson & Bonin, Alfred Smith Landry, New Iberia, Mouton & Jeansonne, *575 Welton P. Mouton, Jr., Lafayette, for defendant-respondents.
CALOGERO, Justice.
Plaintiff's medical malpractice claim against Dr. John Tolson, III, Dr. Al Beacham and their insurers was dismissed by the trial court on a exception of prescription. The Court of Appeal affirmed the trial court judgment.[1] Plaintiff complains of the ruling. We granted his application for writs.
The facts as disclosed by the pleadings and by evidence taken at the hearing on the exceptions of prescription are as follows:
On April 9, 1975, Raymond Cordova consulted Dr. John Tolson, III, about performing a voluntary bilateral vasectomy and surgically correcting a right hydrocele.[2] Dr. Tolson discovered that Cordova had a left inguinal hernia and after a general surgeon was consulted, Cordova agreed to have the hernia repair performed at the same time.
Plaintiff was admitted to Lafayette General Hospital for the three surgical procedures on April 27, 1975. Dr. Tolson performed the right hydrocelectomy and the vasectomy. Dr. Edgar Breaux performed the left inguinal hernioplasty. Plaintiff makes no allegation of malpractice concerning the hernioplasty performed by Dr. Breaux. On May 1, 1975 plaintiff was discharged from the hospital.
After leaving the hospital plaintiff telephoned Dr. Tolson's office several times complaining of pain. On May 7, 1975, Dr. Tolson examined Cordova at his office as a result of Cordova's complaint of pain and swelling of the right testicle. He found no indication of tenderness, fluid or pus in the scrotum. He considered the swelling an expected result of the operation. This May 7th visit was the last time Dr. Tolson treated Cordova.
On May 13, 1975, plaintiff called Dr. Tolson's office and spoke with Dr. Beacham, Dr. Tolson's partner. Plaintiff told Dr. Beacham that he had fever, severe pain and swelling in the right testicle. Dr. Beacham saw plaintiff immediately, made a diagnosis of a right testical abscess with pus in the scrotal cavity, and then admitted him to the hospital on the same day.
Plaintiff was treated by Dr. Beacham with warm compresses and antibiotics. When there was no response to this treatment, Dr. Beacham recommended surgery and informed plaintiff that his right testicle might have to be removed. On May 15, 1975, Dr. Beacham performed surgery during the course of which he removed the right testicle. Plaintiff was discharged from the hospital on May 21, 1975.
Following the surgery plaintiff saw Dr. Beacham at his office seven times between May 24, 1975 and June 18, 1975.[3] Plaintiff resumed sexual relations with his wife at the beginning of June, 1975. For a period of time thereafter plaintiff had a normal sex life, but then he experienced a gradual decline in his sex drive. He began suffering from depression and experienced suicidal tendencies.
On April 7,1976, plaintiff returned to Dr. Beacham complaining of possible high blood pressure, dizziness, and decreased sex drive. At this time plaintiff's remaining testicle had shrunk to the size of an olive, approximately one-half its normal size. Dr. Beacham found that plaintiff had minimal prostratitis for which he prescribed sulfa. No medication was given plaintiff for his complaint of loss of libido, i. e., loss of sexual desire.
Dr. Beacham saw plaintiff again on April 21, 1976, at which time laboratory studies were made. On June 22, 1976, plaintiff returned to Dr. Beacham, complaining of frank impotence. By this time the left *576 testicle had almost completely atrophied. Dr. Beacham administered a synthetic male hormone shot and prescribed synthetic male hormone pills. Plaintiff claims that it was at this time that he learned that for all practical purposes he had lost both testicles. On August 11, 1976, Dr. Beacham recommended that plaintiff see a reproductive biologist in Houston.
On August 23, 1976, Cordova was examined by Dr. Emil Steinberger, a Houston reproductive biologist. Dr. Steinberger found that plaintiff's remaining testicle measured 1.2 by 2 centimeters as opposed to a normal range of 2.75 by 4.75 centimeters. He concluded that the remaining testicle was heavily scarred and that the testicles must have been suffering from a primary disease making them unable to produce male hormones. Steinberger started treating plaintiff with male hormone injections with apparent success, but plaintiff's left testicle remains atrophied and unable to produce male hormones.
Suit was filed in Acadia Parish on March 18, 1977, and service was made on March 21, 1977. Defendant's exceptions of improper venue were sustained and the suit was transferred to Lafayette Parish. Under R.S. 9:5801 prescription is interrupted by filing of a civil action if that action is filed in a court of competent jurisdiction and in the proper venue. When the suit is filed in a court of improper venue the running of prescription is not interrupted until defendants are served with process. Mayeux v. Martin, 247 So.2d 198 (La.App. 3rd Cir. 1971). Thus prescription in this case was first interrupted on March 21, 1977.
In summary the pertinent dates for our consideration are as follows:
April 9, 1975Consultation with Dr. Tolson for hydrocele, hernia repair, and vasectomy.
April 27, 1975Hospitalized for surgery by Dr. Tolson.
May 1, 1975Plaintiff discharged from hospital.
May 7,1975Cordova complains of swelling and pain in the scrotum to Dr. Tolson.
May 13, 1975Patient complains of severe pain and swelling, admitted to the hospital by Dr. Beacham.
May 15, 1975Plaintiff has surgery in which Dr. Beacham removes the right testicle.
May 21, 1975Cordova discharged from hospital.
June 18,1975Last office visit by Cordova in 1975.
April 7, 1976Plaintiff complains of possible high blood pressure, dizziness, and loss of libido.
April 21, 1976Laboratory studies done.
June 22, 1976Plaintiff complains of frank impotence, contends that he first learned that he had virtually lost both testicles.
August 11, 1976Dr. Beacham recommends that plaintiff see a reproductive biologist in Houston.
August 23, 1976Plaintiff sees a Houston reproductive biologist who is apparently successful in treating plaintiff for his loss of libido and impotence complaints.
March 21, 1977Defendants are served with process.
The trial court assigned no reasons in sustaining defendants' exceptions of prescription. The Court of Appeal affirmed the trial court judgment that plaintiff's claim had prescribed under R.S. 9:5628, the medical malpractice statute.[4]
In deciding the prescription issue the Appeal Court noted that plaintiff was a sophisticated person who had had numerous operations as a child and several as an adult. But they based their decision sustaining the prescription exception primarily *577 upon plaintiff's testimony that within a year after the surgery his left testicle has shrunk to fifty percent of its normal size. The Appeal Court concluded that by this time (March 1976, more than one year prior to service of the lawsuit on March 21, 1977) plaintiff knew or should have known sufficient facts to excite his attention and put him on inquiry that the operations by Doctors Tolson and Beacham may have been negligently performed. Cartwright v. Chrysler Corporation, 255 La. 598, 232 So.2d 285 (La.1970).
That conclusion does not give sufficient weight to the crux of our opinion in Young v. Clement, 367 So.2d 828, 830, where we stated:
"Prescription does not run against one who is ignorant of the existence of facts that would entitle him to bring a malpractice action as long as such ignorance is not willful and does not result from his neglect."

See Henson v. St. Paul Fire & Marine Insurance Co., 363 So.2d 711 (La.1978); Dean v. Hercules Incorporated, 328 So.2d 69 (La.1976); Orleans Parish School Board v. Pittman Construction Co., 261 La. 665, 260 So.2d 661 (La.1972); Penn v. Inferno Manufacturing, 199 So.2d 210, writ den. 251 La. 27, 202 So.2d 649 (1967); Walter v. Caffall, 192 La. 447, 188 So. 137 (La.1939); Comment, The Scope of the Maxim Contra Non Valentem in Louisiana, 12 Tul.L.Rev. 244 (1938).
Plaintiff's failure to connect the gradual shrinkage of his left testicle and decline of interest in sex with an operation performed ten months previously was not the result of neglect or willful ignorance.[5] Cordova's previous operations were unrelated to sexual problems and gave him no special insight into the possible causes of his malady. The law does not impose upon a layman the obligation to self-diagnose a psychopathological condition which reproductive biologists themselves do not fully understand. Plaintiff had confidence in his physicians' skill and judgment.
It was not unreasonable for plaintiff not to be aware that defendants may have negligently performed the operation,[6] considering that he resumed normal sexual relations with his wife three weeks after the right testicle was removed and continued to have satisfactory sexual relations for some time thereafter. The mere apprehension by plaintiff that "something was wrong" is not sufficient to start prescription unless plaintiff knew or should have known by exercising reasonable diligence that there was a reasonable possibility that his problem condition, the loss of libido and/or impotence, may have been caused by acts of malpractice. We are not prepared to charge plaintiff with such knowledge prior to June, 1976, when he became impotent and learned that he had virtually lost both testicles. Even if we were to impose a stricter standard of inquiry upon Cordova, i. e., his attention was or should have been excited and he was put on his guard when he noticed a sharp decline in his interest in sex, that knowledge was acquired shortly before April 7, 1976, within one year of his filing suit.

Decree
For the foregoing reasons the judgments of the trial court and Court of Appeal granting defendants' exceptions of prescription are reversed and the case is remanded to the trial court for further proceedings.
*578 REVERSED; REMANDED TO THE DISTRICT COURT.

ON APPLICATION FOR REHEARING
PER CURIAM.
Dr. John Tolson, III, while stating that he is not a party to these proceedings, makes an application for rehearing complaining of the introductory language of our opinion which he contends infers that he was a party defendant to these proceedings. It is applicant's contention that he has never been served with any pleading herein, nor has he ever made any appearance relative to the matter, and that issue as to him has never been joined.
Without examining the record to determine the accuracy of these allegations, one may observe that the language complained of makes no adjudication as to the identity of the parties to this proceeding.[1]
Accordingly, the application for rehearing filed by Dr. John Tolson, III, is denied.
DENIED.
NOTES
[1] Cordova v. Hartford Accident & Indemnity Company & Doctor A and Doctor B, 378 So.2d 1088 (La.App. 3rd Cir. 1980).
[2] A hydrocele is a sac containing fluid located within the scrotum and surrounding a testicle.
[3] In September of 1975 plaintiff was treated for prostratitis by another physician.
[4] The operations performed in April and May of 1975 as to which plaintiff is charging negligence (although he also contends that defendants negligently treated him prior to the operations) occurred prior to the adoption of R.S. 9:5628. Pertinent to this case R.S. 9:5628 is no different than the prior rule on malpractice prescriptionthat the patient has one year from discovery of the act of malpractice in which to bring suit.
[5] The Attorney's Textbook of Medicine states "Libido or sexual desire is wholly dependent upon unconscious mental processes. Any significant stress in the life of an individual may temporarily cause impotence." (emphasis provided) Gordy-Gray, 4B Attorney's Textbook of Medicine, § 301.32, p. 301-46. The fact that plaintiff had had a testicle removed would not necessarily alert him to the possibility that his sexual problems may have been caused by negligent performance of the operations: "Impotence can be, but rarely is due to physical causes. Even when an adult male is castrated (has his testicles removed) he is usually not impotent." Benjamin F. Miller M.D., The Complete Medical Guide, p. 297, 1956.
[6] We express no opinion as to the merits of plaintiff's allegation of medical malpractice, the only issue before us being whether plaintiff's claim has prescribed.
[1] We note that in the application for rehearing filed by Dr. Tolson, he states:

". . . Reasons for judgment by the trial court judge did dismiss Dr. John Tolson, III from the suit and judgment was prepared in accordance with these reasons and affirmed by the Court of Appeal for the Third Circuit."