608 So.2d 275 (1992)
Cynthia RICHARDSON, et al., Plaintiffs-Appellants,
v.
John F. MOFFETT, M.D., et al., Defendants-Appellees.
No. 91-588.
Court of Appeal of Louisiana, Third Circuit.
November 4, 1992.
Writ Denied February 5, 1993.
Neblett, Beard & Arsenault, Robert W. Hallack, Alexandria, for plaintiff/appellant.
*276 Brame, Bergstedt & Brame, John Bergstedt, Lake Charles, for defendant/appellee-Moffett.
Bergstedt & Mount, Benjamin W. Mount, Lake Charles, for defendant/appelleeHumana.
Before STOKER and KNOLL, JJ., and MARCANTEL,[*] J. Pro Tem.
KNOLL, Judge.
Cynthia Richardson and Michael Richardson appeal the dismissal of their medical malpractice claim against an obstetrician, Dr. John Moffett, and Humedicenter, Inc. d/b/a Humana HospitalLake Charles, on peremptory exceptions of prescription. The trial court found that the Richardsons had the requisite knowledge to start the one year prescriptive period on November 7, 1988, the date of birth of their son; therefore, their petition to convene the medical review panel filed on August 27, 1990, twenty-one months thereafter, was barred by prescription.
The Richardsons argue that the trial court erred in its conclusion that the prescriptive period commenced on the birthday of their son. They contend that the prescriptive period did not begin until September 1, 1989, the date that they were advised that their son had cerebral palsy or, alternatively, the summer of 1990, the time when an attorney had the Richardsons' medical records reviewed. We affirm.
Actions for medical malpractice prescribe one year from the date of the alleged act of malpractice or within one year from the date of the discovery of the alleged act. LSA-R.S. 9:5628.
The one year prescriptive period commences running on the date in which the injured party discovers or should have discovered the facts upon which his cause of action is based. Griffin v. Kinberger, 507 So.2d 821 (La.1987). Constructive knowledge sufficient to commence the running of prescription, however, requires more than a mere apprehension that something might be wrong. Cordova v. Hartford Acc. & Indem. Co., 387 So.2d 574 (La.1980). Prescription does not run against one who is ignorant of the facts upon which his cause of action is based, as long as such ignorance is not willful, negligent or unreasonable. Young v. Clement, 367 So.2d 828 (La.1979). Therefore, even if a malpractice victim is aware that an undesirable condition developed at some point in time after the medical treatment, prescription does not run as long as it was reasonable for the victim not to recognize that the condition may be related to treatment. The proper focus is on the reasonableness of the tort victim's action or inaction. Griffin, supra.
Elaborating further, our brethren of the Second Circuit in Maung-U v. May, 556 So.2d 221, 225 (La.App. 2nd Cir.1990), writ denied, 559 So.2d 1385 (La.1990), stated:
"LSA-R.S. 9:5628 refers to `discovery of the alleged act, omission, or neglect,' but the cases cited above have not required actual knowledge of negligent or improper treatment in order for prescription to begin running. Although the `notice enough to excite attention ... and call for inquiry' rule of Cartwright v. Chrysler Corporation, 255 La. 597, 232 So.2d 285 (1970), has been limited and redefined in later cases, `constructive' knowledge, as opposed to `actual' knowledge, is still recognized as the starting point of the prescriptive period. As stated in Griffin, the focus is on the reasonableness of the inaction by the plaintiff. The rule is whether the cause of action was known or reasonably `knowable' by the plaintiff. The cases refer to facts the plaintiff `should have discovered.' Prescription does not run only as long as it is reasonable for the plaintiff not to recognize that the condition `may' be related to treatment. When a plaintiff has knowledge of facts strongly suggestive that the untoward condition or result may be the result of improper treatment and there is no effort by the *277 health care providers to mislead or cover up information which is available to plaintiff through inquiry or professional medical or legal advice, then the facts and cause of action are reasonably knowable to the plaintiff. Inaction by the plaintiff for more than a year under such circumstances is not reasonable." (Emphasis added.)
At the hearing on defendants' peremptory exceptions, the trial court had three pieces of evidence to consider: the Richardsons' complaint to convoke the medical review panel; an affidavit executed by Cynthia Richardson; and, the live testimony of Dr. Moffett.
The essential facts of the Richardsons' complaint reveal that on November 7, 1988, shortly after 7:00 a.m., Cynthia Richardson presented herself to the emergency room of Humana Hospital with complaints of labor contractions. She was in her twentyseventh week of gestation. Dr. John Moffett, Mrs. Richardson's obstetrician, examined her, and ordered a Ritodrine IV drip to inhibit her premature labor.
During mid-afternoon, the Richardsons allege that the Ritodrine drip had not infused, and that labor continued. Ultimately, Dr. Moffett decided to abandon the attempts to inhibit labor, and prepared Mrs. Richardson for delivery. At 9:00 p.m., Dr. Moffett ruptured the membranes surrounding the baby, and at 10:26 p.m., Mrs. Richardson delivered a two pound twelve ounce boy.
Initially, the Richardsons' son was placed by the neonatologist on ventilatory support because of suspected respiratory distress syndrome associated with premature delivery. Ten days later, ventilatory support was discontinued because of the baby's improved condition. However, the condition of the Richardsons' baby worsened shortly thereafter, and the baby was transferred on November 25, 1988, to Ochsner Foundation Hospital in New Orleans. The baby remained hospitalized at the Neonatal Intensive Care Unit at Ochsner's where several surgical procedures were performed during the next several months.
Adding to these facts, Mrs. Richardson entered into evidence an affidavit, stating that on September 1, 1989, her baby son was diagnosed by Dr. Andrea L. Starrett as having cerebral palsy. Furthermore, in her affidavit, Mrs. Richardson stated that during the summer of 1990, she had her attorney evaluate the medical records involving her obstetrical care and her son's medical treatment. On August 27, 1990, the Richardsons filed their complaint invoking a medical review panel to assess the alleged negligence of Dr. Moffett and Humana.
We point out that in the evaluation of the issue of prescription the courts have repeatedly stated that the focal point of inquiry is on the question of whether the cause of action was known or reasonably knowable by the plaintiffs. For this reason, the jurisprudence has time and again rejected the contention, such as the one raised by the Richardsons herein, that the prescriptive period did not begin to run until they realized the full impact of the alleged act of malpractice, i.e., the date that they were told that their son suffered cerebral palsy. Cordova, supra; Young, supra; Maung-U, supra. Similarly, when there has been no effort by the health care providers to cover up information or mislead, the jurisprudence has uniformly held that a plaintiff does not have to possess actual knowledge, vis-a-vis through legal advice, of negligent or improper treatment to begin the running of prescription. Id. Accordingly, we find no merit to the Richardsons' contentions that prescription did not begin to run until there was a diagnosis of cerebral palsy or until their attorney evaluated the medical records.
From our examination of the record, it is apparent that all of the facts alleged in the Richardsons' petition were known to them on the night of delivery. Elaborating on the facts sketched out in the Richardsons' petition, Dr. Moffett testified that he first examined Mrs. Richardson at 8:10 a.m., and that the Ritodrine drip was started approximately twenty-six minutes later. Dr. Moffett further testified that shortly before noon, Mrs. Richardson experienced chest pains and palpitations, common side effects *278 of Ritodrine, an adrenaline-like drug. As a result, they decreased the Ritodrine drip, and maintained it until 7:40 p.m. Moreover, Dr. Moffett, in unrefuted testimony, told the trial court that he discussed with the Richardsons the very critical nature of a premature delivery at 27 weeks. He further stated that he informed Mrs. Richardson that many of the babies born prematurely do not survive, and that he was uncertain that he could stop the labor. Dr. Moffett also testified that because Mrs. Richardson was visibly upset about the survival potential associated with premature births, Dr. Lynn, the neonatologist who would later be responsible for her baby's care, was called in to discuss the problems premature babies face at birth at this stage of gestation. Furthermore, Dr. Moffett testified that he discussed with the family the problems Mrs. Richardson encountered with the administration of the Ritodrine, and their inability to inhibit labor further.
Given the facts of this case, we cannot say that the Richardsons were reasonable in failing to bring their malpractice action twenty-one months from the night of delivery. As was stated in Maung-U, supra at 226:
"Plaintiffs may not have known all the detailed medical facts surrounding Mrs. Maung-U's labor and delivery until after they consulted a lawyer, took depositions, and the like, but they knew enough to have more than a mere apprehension that the condition of their child might relate to improper treatment. Their failure to make further inquiry or consult medical or legal professionals to gain knowledge of additional facts for more than two years was not reasonable.... Lack of knowledge of facts supporting their cause of action, if such facts exist, was due to their own neglect. The cause of action and supporting facts were known or reasonably knowable to the plaintiffs early on and more than a year before they filed their claim with the insurance commissioner."
These words are equally applicable herein. Based on the record before us, we likewise find that the Richardsons had knowledge on the night of delivery of their son of all of the facts alleged in their petition. Accordingly, the prescriptive period commenced on the birthday of their son.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to the Richardsons.
AFFIRMED.
NOTES
[*] Judge Bernard N. Marcantel participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.