723 So.2d 474 (1998)
Aubrey LeCOMPTE, Melissa Foor LeCompte, and Rochelle Ellen LeCompte
v.
STATE of LouisianaDEPARTMENT OF HEALTH AND HUMAN RESOURCESSOUTH LOUISIANA MEDICAL CENTER and Dr. Robert Cazayoux and Dr. John R. Landry and Dr. E. Hayes and Drs. John Doe and Nurses Jane Doe.
No. 97 CA 1878.
Court of Appeal of Louisiana, First Circuit.
September 25, 1998.
*475 John D. Rawls, Judith A. Gic, New Orleans, for Plaintiffs-Appellants Aubrey Le-Compte, et al.
James H. Gibson, Lafayette, for Defendants-Appellees State of LouisianaDepartment of Health and Human Resources, et al.
Franklin D. Beahm, Metairie, for John R. Landry, M.D.
BEFORE: FITZSIMMONS and GUIDRY, JJ., and CHIASSON, J. Pro Tem.[1]
GUIDRY, J.
Plaintiffs, Aubrey LeCompte and Melissa Foor LeCompte, individually and on behalf of their minor daughter, Rochelle LeCompte, appeal from a judgment dismissing their *476 medical malpractice claim against defendants, the Department of Health and Human Resources, a Division of the State of Louisiana; South Louisiana Medical Center; and Dr. Eric Hayes. We affirm.

BACKGROUND
On October 13, 1988, plaintiffs, Aubrey LeCompte (Mr. LeCompte) and Melissa Foor LeCompte (Mrs. LeCompte), individually and on behalf of their minor daughter, Rochelle LeCompte, filed a petition for damages, naming as defendants: the State of Louisiana, Department of Health and Human Resources, South Louisiana Medical Center, and Dr. Eric Hayes, the obstetrician who delivered Rochelle (collectively referred to as "defendants").[2] Plaintiffs allege that during the birth of Rochelle, the defendants deviated from the acceptable standard of care, and as a direct result, the defendants caused Rochelle to develop cerebral palsy. Defendants filed an answer, generally denying plaintiffs' allegations.
Defendants filed a peremptory exception pleading the objection of prescription, alleging that prescription commenced seven months after the birth of Rochelle, and plaintiffs' suit was not filed within the one-year prescriptive period. A hearing on the peremptory exception was held on April 25, 1997. Following this hearing, the trial court rendered a judgment in favor of the defendants, finding that plaintiff's medical malpractice claim had prescribed. Plaintiffs now appeal.

PRESCRIPTION
Plaintiffs argue that the trial court erred in finding that their claim had prescribed prior to the filing of their petition. Plaintiffs assert that they did not become aware of their medical malpractice claim until Mrs. LeCompte saw a television commercial in which an attorney indicated that doctors sometimes cause cerebral palsy, and this did not occur until sometime during the period of time between October 1987, and May 1988. However, defendants contend that plaintiffs' claim is untimely because Mrs. LeCompte became aware of her medical malpractice claim in May 1986, when Rochelle was diagnosed with cerebral palsy.
Actions for medical malpractice prescribe one year from the date of the alleged act of malpractice or within one year from the date of the discovery of the alleged act. See LSA-R.S. 9:5628. However, all actions must be brought within three years from the date of the alleged act or they are forever barred. See LSA-R.S. 9:5628. The central issue for this court to determine is what date the plaintiffs had actual or constructive knowledge sufficient to begin the running of the prescriptive period on their medical malpractice claim against the defendant.
Generally, prescription commences when plaintiff has "actual or constructive knowledge of the tortious act, the damage and the causal relation between the tortious act and the damage." Sartin v. St. Paul Fire and Marine Insurance Co., 359 So.2d 649, 651 (La.App. 1st Cir.1978), quoting Duhon v. Saloom, 323 So.2d 202, 204 (La.App. 3rd Cir.1975), writ refused, 325 So.2d 794 (La.1976). When a party has sufficient information to incite curiosity, to excite attention, or to put a reasonably minded person on guard and call for inquiry, he or she has the constructive knowledge necessary to start the running of prescription. Tilley v. Kennedy, 605 So.2d 226, 228 (La.App. 2nd Cir. 1992).
Realizing the aforementioned constraints of the law, it is incumbent upon this court to closely review the relevant facts in light of whether they would have put a reasonable person on notice of a medical problem. The evidence reveals that Melissa Le-Compte, in addition to consuming alcohol, smoked cigarettes and marijuana during her pregnancy. Mrs. LeCompte received prenatal care on three occasions during her pregnancy. She was admitted to South Louisiana Medical Center on October 13, 1985, despite the fact that her water broke approximately 24 hours earlier. She experienced *477 no labor pains during the entire labor. Labor was eventually induced and Rochelle Le-Compte was born on October 14, 1985. Immediately following Rochelle's birth, she went limp and a pediatrician was called in to resuscitate and intubate Rochelle. According to Mrs. LeCompte, everyone in the delivery room "hovered" around Rochelle and then abruptly left the room after her birth. Mrs. LeCompte stated that because of her physical position at that time, she was unable to see exactly what was going on with Rochelle. Rochelle was subsequently hospitalized for a period of eleven days at which time Mrs. LeCompte was informed that she had given birth to a premature baby who was in guarded condition due to the presence of respiratory distress and the later development of hyperbilirubinemia and pneumonia. We find solace in our conclusion that the LeCompte's knew that something had gone wrong during the birth of their daughter and that whatever it was continued to be a problem, at least during the time she was hospitalized. However, mere apprehension that something might be wrong is insufficient to commence the running of prescription unless plaintiff knew or should have known by exercising reasonable diligence that there was a reasonable possibility that his or her problem may have been caused by acts of malpractice. Cordova v. Hartford Accident & Indemnity Company, 387 So.2d 574, 577 (La.1980). Even if a malpractice victim is aware that an undesirable condition developed at some point in time after the medical treatment, prescription does not run as long as it was reasonable for the victim not to recognize that the condition may be related to the treatment. The proper focus is on the reasonableness of the tort victim's action or inaction, in light of the facts known to them, or which should have been known to them. We must, therefore, determine the point at which plaintiffs became aware of sufficient information to call for inquiry regarding the possibility of a medical malpractice claim. Noting the complexity of making such a determination, we rely upon the guidance of the court in Harlan v. Roberts, 565 So.2d 482, 486 (La.App. 2nd Cir.), writ denied, 567 So.2d 1126 (La.1990) which wisely stated:
When a plaintiff has knowledge of facts strongly suggestive that the untoward condition or result may be the result of improper treatment and there is no effort by the health care providers to mislead or cover up information which is available to plaintiff through inquiry or professional medical or legal advice, then the facts and the cause of action are reasonably knowable to plaintiff. Inaction by the plaintiff for more than a year under these circumstances is not reasonable.
In May 1986, when Rochelle was seven months old, she was diagnosed with cerebral palsy. Unfortunately, the record fails to educate the court on the condition of Rochelle from two weeks after birth until this diagnosis at seven months. The absence of this information places this court at a disadvantage in trying to reach a just decision. This knowledge would certainly have made this task less difficult. Nevertheless, upon diagnosis, Mrs. LeCompte was informed that generally, cerebral palsy is caused by a lack of oxygen to the brain at birth. The physician did not inform Mrs. LeCompte as to the exact cause of Rochelle's cerebral palsy, and she did not ask him. The next form of information available to the plaintiffs was Rochelle LeCompte's birth certificate which indicated the presence of congenital malformations or abnormalities, identified as Preterm Respiratory Distress Syndrome, and further noted there existed complications of labor. Finally, in addition to these post-birth warnings is the fact that a half brother of Aubrey LeCompte has cerebral palsy. We feel this should have given the plaintiffs the requisite basis for inquiry regarding the possibility of a medical malpractice claim.
This court has previously stated that facts such as a patient's educational background, intelligence, and past experiences with medical procedures may be considered in determining whether or not he had knowledge of a potential malpractice claim. Lambert v. Metrailer, 485 So.2d 69, 71 (La.App. 1st Cir.) writ denied, 488 So.2d 1023 (La.1986). Aubrey and Melissa LeCompte, using this logic, attempt to negotiate the "reasonableness" standard previously enunciated by profiling themselves as persons of minimal and questionable *478 competence. However, we do not associate one's failure to satisfy high school requirements with the inability to do so, absent evidence in support of such a contention.
Melissa LeCompte has demonstrated the faculties necessary to obtain a G.E. D.; enter beauty school; maintain independent living since the age of sixteen, both in and out of state; maintain a number of jobs; effectively communicate her medical needs and history upon arrival at the hospital; and to respond without assistance to challenging inquires at her deposition. In one instance, she even displayed sufficient intellect to quiz the defendants' attorney on the importance of a question asked of her. Aubrey Le-Compte negotiated entry into the United States Army, which requires a showing of competency; received an honorable discharge upon exiting; and maintained independent living in a number of states. He testified that his failure to complete school was because he did not go back for his senior year, a voluntary act in our opinion. There is no evidence in the record that either plaintiff had any disability or limitation which would have precluded them from acting timely. Having considered this argument, we point out that one may not escape the commencement of prescription by attempting to establish that their ability to comprehend and evaluate the facts is inferior to that possessed by a reasonable man. Taussig v. Leithead, 96-960 (La.App. 3 Cir. 2/19/97), 689 So.2d 680, 684 (quoting Norwood v. Fish, 537 So.2d 783 (La.App. 2nd Cir.) writ denied, 539 So.2d 634 (La.1989)). We note that the correct standard is whether the reasonable person would have or should have discovered facts sufficient to hail the alleged wrongdoing in the same circumstances.
In Griffin v. Kinberger, 507 So.2d 821 (La.1987), the court determined that the point at which an eighteen-year old mother with a sixth grade education was reasonably alerted of the possible cause of action was when she read a newspaper article informing her of such. In this instance, the court suspended the prescriptive period during the time the cause of action was not known or reasonably knowable to this mother. What is highly distinguishable about this case is the absence of any cause for alarm at the birth of the child. Additionally, this mother, with less education than the plaintiffs, made repeated inquires of physicians who assured her that her child's eye condition was a natural and expected consequence of the necessary administration of oxygen to premature children at birth. The court held that prior to the diagnosis, plaintiffs had no reason to relate the child's eye problems to any malpractice on the part of the doctors, especially since the doctors told them this was a normal result of the treatment the child received.
In Maung-u v. May, 556 So.2d 221 (La. App. 2nd Cir.) writ denied, 559 So.2d 1385 (La.1990), a child suffered asphyxia at birth and was later placed in critical condition following the birth. In months following the delivery, the plaintiffs learned of problems and delays in development which the child was experiencing; however, they were cautioned to wait for certain landmark dates prior to a final decision being made as to the child's condition. Within months of the child being diagnosed with cerebral palsy, the plaintiffs initiated a malpractice lawsuit. The court held that the plaintiff was aware of the difficulty of the child, the abnormal labor and delivery problems and the umbilical cord around the neck of the child at the time of delivery. Based upon these facts, the court stated that the plaintiff was not reasonable in failing to bring their action over two years from the night of delivery.
In Poole v. Physicians & Surgeons Hospital, 516 So.2d 1185 (La.App. 2nd Cir.1987) writ denied, 519 So.2d 127, 128 (La.1988), the mother of a baby who had suffered birth trauma was informed by a physician that there had been considerable improvements in the child's condition but a determination of brain damage was later made. This mother followed-up with tests at three-month intervals but was assured that an accurate diagnosis could not be determined until later in time. The court determined that the plaintiff did not have actual or constructive notice of their medical malpractice action prior to one year before institution of the suit because no health care worker ever made any suggestion of negligence to her, despite a diligent effort to ascertain the nature of her *479 child's illness. This is distinguishable from the case at hand because the record is void of evidence that the plaintiffs made any effort to obtain any medical care for their baby prior to diagnosis.
In Richardson v. Moffett, 608 So.2d 275 (La.App. 3rd Cir.1992) writ denied, 612 So.2d 81 (La.1993), in arguing against an exception of prescription, plaintiffs maintained that the prescriptive period did not begin to run until the date a diagnosis was made that their son had cerebral palsy, or following that when an attorney first reviewed the medical records. In affirming the Trial Court's dismissal of the action based upon the one year prescriptive period provided by La. R.S. 9:5628, the Court pointed out that plaintiffs were aware of the pertinent facts on the night of delivery. The court also rejected plaintiffs argument that suit may be brought one year from the date their child was diagnosed as suffering from cerebral palsy.
Plaintiffs rely heavily on the recent third circuit decision of Quibodeaux v. Medical Center of Southwest Louisiana, 97-204 (La. App. 3rd Cir.3/16/98), 707 So.2d 1380. The instant case is distinguishable from Quibodeaux in that the court in Quibodeaux places great weight on the fact that parts of the alleged malpractice occurred out of plaintiff's view. In the instant case, Melissa LeCompte was present at the birth of her daughter. According to Mrs. LeCompte, everyone in the delivery room "hovered" around Rochelle and then abruptly left the room after the birth. She testified that she could not see exactly what was going on but she admits she saw the activity. In Quibodeaux, Mrs. Quibodeaux could not see any activity that was substantially suspect and that should have alerted her to the possibility of malpractice. The same cannot be said of Mrs. LeCompte.
The burden of proof generally rests upon the party pleading prescription as an affirmative defense. Where, however, plaintiff's petition shows on its face that the asserted claim has prescribed, plaintiff bears the burden of proving interruption or suspension of prescription sufficient to bring the action within the prescriptive period. Abrams v. Herbert, 590 So.2d 1291, 1297 (La.App. 1st Cir.1991) (quoting Hunter v. Sisters of Charity of Incarnate Word, 236 So.2d 565, 567 (La.App. 1st Cir.1970)). We point out that in the evaluation of the issue of prescription the courts have repeatedly stated that the focal point of inquiry is on the question of whether the cause of action was known or reasonably knowable by the plaintiffs. Richardson v. Moffett, 608 So.2d 275, 277 (La.App. 3rd Cir.1992). We find a frightening lack of diligence on the part of the plaintiffs in seeking to determine whether or not they had a cause of action for medical malpractice. Accordingly, they have failed to meet their burden of proving otherwise.
From our examination of the record, it is apparent that all of the facts alleged in the plaintiffs' petition were known to them on the night of the delivery. Despite the plaintiffs having knowledge of the complications of the birth, the extensive treatment of the child at the hospital, the child having been diagnosed with cerebral palsy, and the possible causal relationship between cerebral palsy and the birthing process, no action was filed until one day short of three years following the birth of the child and more than twenty-nine months following the cerebral palsy diagnosis. When considering the totality of the circumstances, it is our view that the Le-Comptes had sufficient information to incite curiosity or to excite attention and call for inquiry in a timely fashion. We further find that the afterbirth complications with Rochelle coupled with the general statement by a physician as to the cause of cerebral palsy provided the LeComptes with constructive knowledge to start the running of prescription in May 1986. In addition, we find no evidence indicating that the LeComptes' background or level of intelligence prevented them from inquiring into the existence of their medical malpractice cause of action until Mrs. LeCompte was informed by a commercial advertisement that doctors are sometimes the cause of cerebral palsy. Ignorance of their daughter's condition was the product of their own neglect. Thus, we conclude that plaintiffs' medical malpractice claim filed on October 13, 1988, which was more than two years after May 1986, has prescribed.

*480 CONCLUSION
In the absence of manifest error, the trial court's judgment, maintaining defendants' peremptory exception pleading the objection of prescription, is affirmed. Costs of this appeal are assessed to the plaintiffs.
AFFIRMED.
CHIASSON, J., concurs.
NOTES
[1] Judge Remy Chiasson, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Dr. John R. Landry and Dr. Robert Cazayoux, obstetricians who provided Mrs. LeCompte with prenatal treatment on two occasions, were also named as defendants but were later dismissed from the suit.