| ¡¡GRANT, Judge.
This is an appeal by the plaintiff, Marie Krolick, from the trial court’s judgment sustaining of an exception of prescription, dated April 7,1999, and the denial of plaintiffs motion for new trial and to reopen the record. We affirm.
*23 FACTS AND PROCEDURAL HISTORY
Plaintiff, Marie Krolick, was treated for schizophrenia by defendant, Don F. Carlos, M.D., a psychiatrist, from April 4,1978 until March 23, 1984. Dr. Carlos prescribed Ms. Krolick a neuroleptic medication called Navane for treatment of her problems. Ms. Krolick developed an involuntary movement condition called tardive dyskensia (“TD”) that is known to be caused by neuroleptic medications such as Navane. TD is a condition that causes involuntary muscular tics and spasms, particularly in the facial area. Throughout his treatment of plaintiff, Dr. Carlos suffered from a degenerative eye condition called retinitis pigmentosa, which rendered him functional!y blind. As a result, Dr. Carlos could not have observed any involuntary facial movements by Ms. Krolick.
During her treatment with defendant and thereafter, plaintiff was seen by several other psychiatrists. Sometime in 1982, plaintiff met Dr. Anjani Narra after Dr. Narra moved in next door to Ms. Krolick’s sister. Although plaintiff was not Dr. Narra’s patient, Dr. Narra testified that she refilled Ms. Krolick’s prescription of Navane and another drug, as a courtesy without having taken Ms. Krolick’s medical history. In either October 1983 or September 1984, Dr. Narra saw Ms. Krolick again and noticed facial movements which she recognized as TD. Dr. Narra told Ms. Krolick that she was experiencing the side effect of TD due to the use of the Navane and advised her to immediately advise her treating psychiatrist of this fact. In 1986, Dr. Narra began to see Ms. Krolick as a patient at the Gonzales Mental Health Clinic.
In 1983, Ms. Krolick was seen by Dr. Louise A. Dunbar at East Jefferson Mental Health Clinic. On January 14, 1983, in order for Dr. Dunbar to prescribe more Navane, Dr. Dunbar provided Ms. Krolick with an informed consent form that was signed by Ms. Krolick. In addition to this form, Dr. Dunbar explained to Ms. Krolick the possibility that she was taking a medication that posed a risk of developing of TD as a side effect. The form stated, in part:
|3The doctor has also explained to me that I have abnormal movements of my mouth/tongue/face/body/'extremities. I understand that these movements may have been caused by treatment with neuroleptic drugs which I took in the past/am currently taking .... I have been informed that little is known about the cause of these movements; how long the movements may last (they may be irreversible); or how to treat them. I have also been informed that treatment with neuroleptic drugs, once these movements have developed, may increase their severity or lead to the appearance of new movements.
All my questions pertaining to my emotional problem, its treatment, and my abnormal movements have been answered.

Cross out a. or b.

a. Request for treatment: I hereby give my consent to start/continue ... treatment with Navane, a neuroleptic drug, because I believe my emotional problem represents a greater danger to my health and well being than do the abnormal movements which I have. I understand that treatment with a neuro-leptic drug may temporarily relieve the abnormal movements mentioned above. I understand that periodic examinations will be conducted to determine whether or not the abnormal movements have become more severe, but in the absence of a drug-free trial, such an examination may not reveal whether the movements have worsened.
*24 Section (b) on the form, offering the option to discontinue treatment, was crossed out. In February 1983, Dr. Dunn had noted that Ms. Krolick had TD or at least symptoms of TD.
On October 25, 1984, Ms. Krolick began to be treated by Dr. Charles Dunn. Upon the first visit, Dr. Dunn did not diagnose Ms. Krolick with TD. During the next visit, in January 1985, however, Dr. Dunn observed that, in fact, she did have TD and discussed this finding with Ms. Krolick and her mother. Dr. Dunn advised Ms. Krol-ick that the Navane she had been prescribed sometimes caused irreversible TD and told her to watch for facial movements. Around the same time, Ms. Krol-ick may also have told Dr. Dunn that she saw a program on television about the causal connection between neuroleptic drugs and TD.
On February 16, 1986, plaintiff was seen for the first time by Dr. Hiram Haynie. Dr. Haynie diagnosed Ms. Krolick with severe TD. When asked by Dr. Haynie, Ms. Krolick denied that any medical professional had ever discussed or explained TD to her. Dr. Haynie explained the causes of TD to Ms. Krolick.
Plaintiff brought suit on November 21, 1986 and later amended her suit to bring a medical malpractice claim against Dr. Carlos, among others. On April 7, 1999, Dr. Carlos filed a peremptory exception raising the objection of prescription. A hearing was held on April 27, 1997, and, after consideration of the entire record and memoranda, including the consent form and the deposition testimony of Dr. Dunbar, Dr. Carlos, Dr. Narra, and Dr. RDunn, the trial court granted Dr. Carlos’ exception of prescription.
On May 25, 1999, plaintiff filed a motion for new trial and to reopen the record to include the deposition of Dr. Haynie, which had not been included in the record prior to the trial court’s judgment on the exception of prescription. On August 16, 1999, the trial court heard and denied plaintiffs motion. Plaintiff now appeals the judgment sustaining the exception of prescription and the judgment denying a new trial and reopening of the record.
DISCUSSION
The issue presented to this court is whether plaintiffs malpractice action is barred by liberative prescription. Libera-tive prescription is a mode of barring actions as a result of inaction for a period of time. La. C.C. art. 3447. An exception of prescription is a peremptory exception, which a defendant may raise at any time, including on appeal or after the close of evidence, but prior to its submission after trial. La. C.C.P. arts. 927 and 928(B). If the facts alleged in a petition do not show that a claim has prescribed, the burden is on the party raising the objection of prescription to prove it. Tranum v. Hebert, 581 So.2d 1023, 1030 (La.App. 1 Cir.), writ denied, 584 So.2d 1169 (La.1991). Conversely, if a claim is prescribed on the face of the pleadings, the burden is on the plaintiff to show that prescription has not tolled because of an interruption or a suspension of prescription. Id.
Louisiana Code of Civil Procedure article 929 provides that when a peremptory exception is pleaded prior to trial, the exception is tried and disposed of in advance of or on the trial of the case. On the trial of the peremptory exception pleaded at or prior to the trial of the case, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition. La. C.C.P. art. 931. In the absence of evidence, the objection must be decided upon the facts alleged in the petition and all allegations thereof are accepted as true. Tranum, 581 So.2d at *25 1026. When evidence is introduced and evaluated, the trial court is not bound to accept as true the allegations of plaintiffs petition and an appellate court must review the entire record to determine whether the trial court manifestly erred with its factual conclusions. See Bowers v. Orleans Parish School Board, 95-2530, p. 7-8 (La.App. 4 Cir. 5/29/96), 694 So.2d 967, 972.
| fiThe character of an action as disclosed in pleadings determines the prescriptive period applicable to that action. See Dear v. Mabile, 93-1188, p. 3 (La.App. 1 Cir. 5/20/94), 637 So.2d 745, 747. Moreover, prescriptive statutes are to be strictly construed against prescription and in favor of the obligation sought to be extinguished. If there are two possible constructions, that, which favors maintaining, as opposed to barring an action, should be adopted. Bustamento v. Tucker, 607 So.2d 532, 537 (La.1992).
Rules governing the applicable periods of limitation for actions resulting in injury to persons or property are usually found in the Civil Code or ancillaries to the Civil Code, rather than within the statutes providing the substantive circumstances and conditions under which recovery may be granted. These rules govern the categories of actions addressed, even though the substantive law describing and defining particular claims for relief may be altered from time to time by legislative action or judicial interpretation. It is axiomatic that a determination of the proper prescriptive period to be applied in a case depends on the nature of the cause of action asserted. Roger v. Dufrene, 613 So.2d 947 (La.1993); Starns v. Emmons, 538 So.2d 275 (La. 1989). As previously noted, Ms. Krolick’s claim is in the nature of a medical malpractice claim. Thus, we look to the particular prescriptive period governing that type of action. Boutte v. Jefferson Parish Hospital Service District No. 1, 99-2402, p. 4 (La.4/11/00), 759 So.2d 45, 48.
Louisiana Revised Statute 9:5628 provides:
A. No action for damages for injury or death against any physician, chiropractor, nurse, licensed midwife practitioner, dentist, psychologist, optometrist, hospital duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1299.41(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
B. The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts.
ASSIGNMENT OF ERROR # 1
In her first assignment of error, Ms. Krolick urges that the trial court erred in sustaining defendant’s exception of prescription. Plaintiff asserts that she had no actual or constructive knowledge of the causal connection between the alleged negligence and | fithe damages until February 16, 1986, when she was informed by Dr. Haynie of the cause of TD and the possible negligence by Dr. Carlos. Because a claim was filed on November 21, 1986, plaintiff argues that the action against Dr. Carlos had not prescribed.
To better understand Ms. Krolick’s arguments in favor of reversing the trial *26 court’s judgment sustaining the exception of prescription, we first summarize Ms. Krolick’s claim against Dr. Carlos. Plaintiff alleges, and would like to prove at trial, that the applicable standard of care imposed a duty upon defendant to not only warn plaintiff of the possible side effects associated with taking Navane but also to closely monitor her so that he could have advised plaintiff to stop taking the medication when she began to display signs of irreversible TD. Plaintiff further alleges that because of Dr. Carlos’ vision disability, he was unable to perform his duty to monitor and, therefore, breached the standard of care owed Ms. Krolick. Plaintiff claims that defendant’s negligence was the cause of her acquiring irreversible TD. Thus, plaintiff alleges that the tortious act committed by defendant was not merely prescribing a medication that has side effects without warning of those side effects, but rather, the failure to monitor plaintiff for signs that would indicate that plaintiff should be taken off the medication because of the severity of the side effects.
Plaintiff argues that under Louisiana law prescription is triggered when the plaintiff has actual or constructive knowledge of the tortious act, the damage and the causal connection between the tortious act and the damage. This court has stated the same and explained that:
[Mjere apprehension that something might be wrong is insufficient to commence the running of prescription unless plaintiff knew or should have known by exercising reasonable diligence that there was a reasonable possibility that his or her problem may have been caused by acts of malpractice. Even if a malpractice victim is aware that an undesirable condition developed at some point in time after the medical treatment, prescription does not run as long as it was reasonable for the victim not to recognize that the condition may be related to the treatment.
LeCompte v. State Department of Health and Human Resources, 97-1878, p. 5-6 (La.App. 1 Cir. 9/25/98), 723 So.2d 474, 477 (citing Cordova v. Hartford Accident & Indemnity Company, 387 So.2d 574, 577 (La.1980)). See also Sartin v. St Paul Fire and Marine Insurance Co., 359 So.2d 649, 651 (La.App. 1 Cir.1978). Thus, when a potential claimant is unaware of his damage or its cause, or otherwise prevented from acting, the doctrine of contra non valentem agere nulla cumt praescriptio may be invoked. Abrams v. Herbert, 590 So.2d 1291, 1295 (La.App. 1 Cir.1991). (“Prescription does not run against a party unable to act,” as translated in Chaney v. State Through Department of Health and Human Resources, 432 So.2d 256, 258 n. 4 (La.1983)).
In this case, plaintiff urges that the prescriptive period began when the plaintiff acquired knowledge that 1) Dr. Carlos failed to properly monitor her, 2) she had TD, and 3) Dr. Carlos’ failure to monitor and take her off the medication caused her irreversible TD. Of the three elements necessary to trigger the running of prescription, the first (Dr. Carlos’ failure to properly monitor) became known to plaintiff last. It was only after Dr. Haynie explained to Ms. Krolick the cause and effects of TD that she acquire the knowledge to trigger the running of prescription. In essence, plaintiff argues that even though she may have known long before filing suit that she had TD and that it was side effect of taking Navane, she did not know and could not have known that Dr. Carlos should have been watching her carefully for symptoms of irreversible TD. She argues that merely being advised by Dr. Carlos and/or other doctors that Na-vane may cause TD does not thereby impute upon a lay person the knowledge that *27 a prescribing doctor’s duty is to monitor his patient for signs such a muscular tics and tremors and if necessary, to take the patient off the medication before permanent damage is done.
Defendant counters that whether or not Dr. Carlos himself gave Ms. Kroliek adequate warnings about the side effects of Navane is not relevant because the evidence introduced at the trial of the exception gives ample support to the fact that Ms. Kroliek was advised long before one year prior to filing suit that she had TD and that in all probability it was caused by the Navane initially prescribed to her by Dr. Carlos.
Under the doctrine of contra non valentón, courts dispense with prescription in the interests of justice under special circumstances. Louisiana jurisprudence recognizes four such exceptional circumstances, which list has been treated exhaustive although sometimes broadly construed. The fourth exception is:
Where the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant. (This principle will not except the plaintiffs claim from the running of prescription if his ignorance is attributable to his own willfulness or neglect; that is, a plaintiff will be deemed to know what he could by reasonable diligence have learned.)
Corsey v. State, Through Department of Corrections, 375 So.2d 1319, 1321-22 (La. 1979). Thus, when a party has sufficient information to incite curiosity, to excite attention, or to put a reasonably minded person on guard and call for inquiry, he or she has the constructive knowledge necessary to start the running of prescription. It is incumbent upon this court to closely review the relevant facts in light of whether they would have put a reasonable person on notice of a medical problem. Le-Compte, supra, 97-1878 at p. 4, 723 So.2d at 476 (citing Tilley v. Kennedy, 605 So.2d 226, 228 (La.App. 2 Cir.1992)).
Objectively we find that being diagnosed by more than one doctor with TD and being advised of the possibility that it was brought on by medication would excite the attention and prompt further inquiry by a reasonably minded person. Ms. Kroliek was given and signed a consent form. This consent form, at the very least, made Ms. Kroliek aware of the possibility that she was taking a medication that posed a risk of developing of TD as a side effect. In either October 1993 or September 1984, Ms. Kroliek was advised by Dr. Narra that she had TD and that Ms. Kroliek should immediately make her treating physician aware of this fact. As late as January 1985, Dr. Dunn diagnosed Ms. Kroliek as having TD and discussed this finding with her and her mother. Dr. Dunn advised Ms. Kroliek that the Navane she had been prescribed sometimes caused irreversible TD and told her to watch for facial movements. Given the information Ms. Kroliek received from these doctors and through the consent form she signed, Ms. Kroliek should have exercised reasonable diligence to find out more about TD, its cause, and possible negligence by her prescribing doctor. Ms. Kroliek claims that she could not have know about Dr. Carlos’ negligence until the day she had a detailed discussion with Dr. Haynie in which he explained TD and its cause. The question we have is, why did she not seek out this degree of Information when she first was told that she was afflicted with TD. The only reasonable conclusion is that her lack of knowledge was brought on by her own neglect.
As cited above, the Medical Malpractice Act provision on prescription mimics the general provision in Louisiana Civil Code article 3468 in that the pres *28 criptive period runs against all persons whether or not infirm or under disability of any kind and including minors and interdicts. One may not escape the commencement of prescription by attempting to establish that their ability to comprehend and evaluate the facts is inferior to that possessed by a reasonable man. The correct standard is whether the reasonable person would have or should have discovered facts sufficient to hail the alleged wrongdoing in the same circumstances. See LeCompte, supra, and cases cited therein. Confronted as we are with this objective standard, we find that Ms. Krol-ick, despite her history of mental illness, was aware of sufficient information to call for inquiry regarding the possibility of medical malpractice on the part of Dr. Carlos. Thus, we find that Ms. Krolick’s 1 gdelay in bringing her claim was unreasonable, and the action had therefore prescribed.
ASSIGNMENT OF ERROR # 2
In her second assignment of error, plaintiff claims that the trial court erred in denying a new trial and reopening of the record. Generally, the trial judge should grant a new trial when the trial court, in the exercise of discretion, is convinced by its examination of the facts that the judgment would result in a miscarriage of justice. Northshore Insurance Agency, Inc. v. Farris, 634 So.2d 867, 871 (La.App. 1 Cir.1993). The trial court has much discretion in determining whether to grant a motion for new trial. La. C.C.P. art 1971. When the trial court’s decision is reviewed on appeal, appellate courts determine whether the trial court abused its discretion in granting or denying the motion for new trial. Belle Pass Terminal, Inc. v. Jolin, Inc., 92-1544, 92-1545, p. 44, (La.App. 1 Cir. 3/11/94), 634 So.2d 466, 493, writ denied, 94-0906 (La.6/17/94), 638 So.2d 1094. A trial court’s action in granting or denying new trial on discretionary grounds will not be reversed, unless abuse of discretion can be demonstrated. Heritage Worldwide, Inc. v. Jimmy Swaggart Ministries, 95-0484, p. 3 (La.App. 1 Cir. 11/16/95), 665 So.2d 523, 526, writ denied, 96-0415 (La.3/29/96), 670 So.2d 1233.
Finding, as we have above, that the trial court did not err in sustaining defendant’s exception of prescription, we also find that the trial court did not abuse its discretion.
CONCLUSION
For all the foregoing reasons, we affirm the trial court’s judgments sustaining defendant’s peremptory exception of prescription and denying plaintiffs motion for new trial and reopening of the record. All costs are assessed against the plaintiff-appellant, Marie G. Krolick.
AFFIRMED.