856 So.2d 1207 (2003)
Stacy M. BAILEY, Individually and on behalf of her minor child, Tyrell Jevon Manuel
v.
William Mark HAYNES, M.D.
No. 2003-C-1209.
Supreme Court of Louisiana.
October 10, 2003.
*1208 Writ denied.
CALOGERO, C.J., and KIMBALL, J., would grant the writ.
JOHNSON, J., would grant the writ and assigns reasons.
JOHNSON, J., would grant the writ for the following reasons.
The Louisiana legislature passed the Medical Malpractice Act of 1975, and other relevant legislation, in response to increasing costs of medical malpractice insurance.[1] LSA-R.S. 9:5628 establishes a prescriptive period pertaining to medical malpractice. Part A of the statute requires that suit against a healthcare provider be brought within one year of the alleged tortious act or within one year of the date of discovery of the cause of action so long as the action is filed within three years from the date of the alleged tortious act. Part B says that the prescription also applies to minors and interdicts.
While the legislation manifests a clear intent to limit the vulnerability of healthcare providers to malpractice lawsuits, the Louisiana Supreme Court has created some balance by stating that the law does not impose upon a layman the obligation to self-diagnose. Campo v. Correa, 01-2707 (La.2002), 828 So.2d 502; Cordova v. Hartford Accident & Indemnity Co., (La.1980), 387 So.2d 574.
Louisiana courts have used two main approaches to determine when a plaintiff has acquired constructive knowledge in medical malpractice prescription cases where the plaintiff's child was injured during delivery and was later diagnosed with cerebral palsy, pursuant to LSA-R.S. 9:5628.
The first line of cases, which are analogous to the case at hand, ruled that medical malpractice suits were filed timely where the plaintiff was aware that the child was injured at delivery but was ignorant of the cause of action at such time and only acquired constructive knowledge upon obtaining subsequent information from a healthcare provider, which suggested the possibility that the child's condition was related to malpractice and plaintiff filed her suit within one year of such discovery and within three years from the date of the alleged act. Adams v. Louisiana Medical Mutual Insurance, (La.App. 2 Cir.2000), 756 So.2d 708; LeCompte v. State of LouisianaDepartment of Health and Human ResourcesSouth Louisiana, (La.App. 1 Cir.1998), 723 So.2d 474; Welch v. St. Francis Medical Center, Inc., (La. App. 2 Cir.1988), 521 So.2d 758; Poole v. Physicians & Surgeons Hospital, et al., 516 So.2d 1185 (La.App. 2 Cir.1987).
The court in Adams v. Louisiana Medical Mutual Insurance reversed the lower court's ruling sustaining the defendant's exception of prescription because the court ruled that prescription began to run with the diagnosis and information from a doctor, not at the time of the child's birth, despite the child being born premature and having many serious medical problems which included treatment for seizures. The court's findings included medical records from the delivery that referred to "unknown causes" for the child's seizures. Social security benefits were sought by the mother on behalf of the child where the *1209 mother referred to the child's health problems being caused by prematurity, not by medical negligence. Further, a doctor who saw the child at eleven months stated in his report that the parents did not know the cause of the child's seizures. An affidavit by the delivering physician also indicated that the parents were justified in failing to suspect malpractice since the doctor told the parents that the emergency procedures were necessary because the baby was premature. Id. at 718.
Similar to the plaintiffs in Adams, Stacey Bailey was never told the specific cause of her child's difficult birth nor did she have any reason to believe that the difficulty arose from medical negligence. She relied on and trusted her doctor's competence so much so that Stacey Bailey continued to bring her son, Tyrell, to Dr. Haynes after Tyrell's birth. This sixteen year old mother's belief in her doctor's competence was reasonable, given the absence of an event during the delivery that would have sparked an awareness of a cause of action. To the contrary, it would be unreasonable if she continued to bring her child to Dr. Haynes if she felt he was negligent in the delivery of her child and the cause of her child's severe developmental problems.
LeCompte v. State of LouisianaDepartment of Health and Human ResourcesSouth Louisiana, involved plaintiffs whose child was diagnosed with cerebral palsy at seven months old, in May 1986, but who argued that they did not become aware of a medical malpractice claim until the mother saw a commercial that indicated that doctors are sometimes responsible for cerebral palsy, more than one year later. The court sustained the lower court's judgment to grant defendant's exception of prescription because the court reasoned that the afterbirth complications of the child "coupled with the general statement by a physician as to the cause of cerebral palsy provided the LeComptes with constructive knowledge to start the running of prescription in May 1986," the date of the diagnosis. Similarly, Stacey Bailey's prescription date should begin to run on July 18, 1996, the time that her child was diagnosed with cerebral palsy.
Poole v. Physicians and Surgeons Hospital is the most factually similar case to the case at hand, with the exception that the plaintiff mother in Poole was a 32 year-old college graduate, rather than a sixteen year old high school student like Stacey Bailey. In Poole, the claimant mother was found by the court not to have had either actual or constructive knowledge of her cause of action prior to one year before the institution of her suit. Like Stacey Bailey, the claimant mother in Poole had a difficult labor and delivery, her child experienced seizures immediately following birth and was subsequently transferred for thirteen days to a special unit at the Schumpert Hospital in Shreveport, the same facility to which Ms. Bailey's child was transferred. Unlike Stacey Bailey, however, Mrs. Poole was thirty-two years old, a college graduate, had a relative advise her to have the baby tested three months after delivery, and had a nurse friend advise her on fetal monitoring.
The court in Poole declined to dismiss the claimant's action based on prescription, despite the mother's education, available resources, and the severity of the child's symptoms at birth because the court found that plaintiff's failure to file suit within one year of her delivery was not the result of either willful ignorance or neglect but for the following three reasons:
(1) plaintiff believed that her difficult labor could have resulted from her "v" shaped pelvis; (2) plaintiff had confidence *1210 in her treating physician; and (3) no physician or health care worker suggested to plaintiff that negligence might have been involved in her child's birth. Poole at 1189. These three factors are applicable to the case at hand.
First, Stacey Bailey entered the hospital at 42 weeks pregnant and was treated for latent pregnancy to which she could have reasonably attributed her difficult delivery, rather than medical malpractice. Second, she trusted her physician so much so that she continued to bring her child to the same doctor after the delivery. Third, no healthcare worker ever told Ms. Bailey that her child's problems could be the result of negligence, although the record painstakingly describes the doctor's notes explaining to Ms. Bailey "potential" problems her child may develop. There is no indication that Ms. Bailey's failure to file suit earlier was the result of any willful ignorance or neglect but rather she lacked sufficient information to excite her curiosity regarding a cause of action. Ms. Bailey acquired sufficient information to excite her curiosity regarding a cause of action on July 18, 1996 when Vicki Leach, the physical therapist, diagnosed Tyrell with cerebral palsy. Ms. Bailey filed suit within one year of this report on July 15, 1997 and within three years of the date of action, therefore, her suit is timely and not prescribed.
The second line of cases, which are distinguishable from the case at hand, point to a specific event or events that occurred on the delivery day that gave or should have given the plaintiff notice that both the child was injured and that the injury resulted from possible medical malpractice. Bailey v. Haynes, (La.App. 2 Cir. 2003), 843 So.2d 584; Tucker v. Lain, (La. App. 4 Cir.2001), 798 So.2d 1041; Richardson v. Moffett, (La.App. 3 Cir.1993), 608 So.2d 275; Maung-U, et al. v. Dr. James S. May, et al., (La.App. 2 Cir.1990), 556 So.2d 221; Percy v. State of Louisiana, Through E.A. Conway Memorial Hospital, (La.App. 2 Cir.1985), 478 So.2d 570.
In Tucker v. Lain, the court reviewed the trial transcript to conclude that plaintiffs learned of the alleged malpractice and their son's injuries on the day of his birth. The transcript read, "Q. When did you first believe that Dr. Lain did anything wrong to cause your baby's injury? A. During the time of birth and during the time that J.T., when I was in the delivery room and after J.T. was born because if something was wrong with J.T., I should have know way ahead of time." Id. at 1048. There is no evidence in the present record that Stacey Bailey made any such acknowledgment, or that she could have even if she was given the opportunity to respond to such a question, since she contends that she learned of the causal connection between the injury and possible malpractice much later than her delivery date.
The plaintiffs in Richardson v. Moffett, a case relied on by the defendant in the present case, alleged that the delivering physician was negligent in his administration of a Ritodrine IV drip that was used to inhibit premature labor. The court reasoned that the plaintiffs were aware of these facts on the night of delivery and therefore plaintiffs had enough information to make a further inquiry. In the present matter, there is no indication that Stacey Bailey was able to point to a particular procedure during the delivery that put her on notice of possible medical malpractice. Ms. Bailey was certainly aware that the delivery was difficult and that her child was somewhat developmentally delayed, but this understanding only satisfies part of the requirement for constructive knowledge. As this court held in Campo v. Correa, "even if a malpractice victim is *1211 aware that an undesirable condition has developed after the medical treatment, prescription will not run as long as it was reasonable for the plaintiff not to recognize that the condition might be treatment related." Id. at 511.
In Maung-U, et al., v. Dr. James S. May, et al, the court focused on plaintiff's testimony where plaintiff testified that he felt "that something was wrong from the night of delivery. He did not think that Dr. May should have been arriving so late," despite knowing that labor and delivery were proceeding abnormally. Id. at 225. Further, plaintiff's sister was a neonatologist, who plaintiff was in regular communication with, and upon receiving information from plaintiff regarding the child's delivery his sister stated that she was "mad because of delays in delivery." Id. at 225. Plaintiff also stated that friends advised him to seek legal counsel over a year before his deposition was taken. The court ruled that plaintiff's failure to make further inquiry or consult medical or legal professionals for more than two years was unreasonable. Stacey Bailey's case is distinguishable because there is no evidence in the record that there was an event, such as a doctor arriving late to an abnormal delivery, that would spark her awareness of a cause of action, nor is there any evidence that this sixteen year old mother had any close relatives or friends who were medical or legal specialists and who saw her baby and counseled her regarding her child's injuries.
Plaintiff, Stacey Bailey, filed this action less than one year after she acquired sufficient information regarding the causal link between her child's injuries at birth and possible medical negligence during the delivery. Thus, she acquired constructive knowledge of potential medical malpractice on July 18, 1996, the date of the physical therapist's report that diagnosed the child with cerebral palsy, and she filed her complaint with the Patient's Compensation Fund on July 15, 1997, less than one year after she had constructive knowledge of her cause of action and within three years of the September 9, 1995 delivery date. Her claim was filed timely because up until the physical therapist's report, there was no event or information that sparked her awareness of a cause of action regarding medical malpractice. She knew that her delivery was difficult and that her child was injured but she was ignorant of the facts that would have led her to further inquiry regarding her doctor's competence. To assume that it was unreasonable for Stacey Bailey to file suit after she acquired sufficient information from the therapist regarding Tyrell's injuries and possible medical negligence, rather than her filing a speculative suit within a year of Tyrell's birth, without any healthcare worker informing her of possible medical malpractice, despite the numerous documented conversations between the doctors and Ms. Bailey, is to impose upon Ms. Bailey the undue burden to self-diagnose. Such a burden would be unreasonable and contrary to the intent of LSA-R.S. 9:5628.
NOTES
[1] Hackenberg, E. Scott, Puttering About In A Small Land: Louisiana Revised Statutes 9:5628 and Judicial Responses To The Plight Of The Medical Malpractice Victim, 50 La. L.Rev. 815 (1990).