JiDECUIR, Judge.
Dr. Calvin White, defendant in this medical malpractice action, appeals the judgment of the trial court overruling his peremptory exception of prescription. Finding no manifest error in the factual conclusions reached by the trial court, we affirm.
Plaintiffs are the husband and adult children of Charlotte Mouton, a fifty-one year old teacher who died from a pulmonary thromboembolism three days after a minor hernia operation. Mrs. Mouton was hospitalized on February 20, 1992 for the surgical repair of a hernia. The surgery was uneventful, and she was discharged the following day. On the evening of February 22, Mrs. Mouton began to feel bad and suffered a fainting spell or seizure on the morning of February 23. She was brought to the emergency room where she was treated, appeared to recover, and was released.
LMrs. Mouton had another spell shortly after returning home and was immediately brought back to the hospital. She was seen by Dr. White, her family physician. He admitted her, then transferred her to the intensive care unit when she suffered yet another spell of seizure like activity, weakness, and low blood pressure. Dr. White and the other physicians participating in her care suspected an embolism was the cause of her rapidly deteriorating condition. Accordingly, anticoagulant therapy was initiated but was unsuccessful, and Mrs. Mouton died at 7 o’clock that evening.
In the weeks after his wife’s death, Mr. Mouton was concerned about what had happened at the hospital on February 23. He spoke to Dr. White who assured him that everything that could have been done for Mrs. Mouton was done. He spoke to a fellow church member, a physician, who told him, as a general comment, that when he participated in post-operative care during his residency in the 1970’s, anticoagulant therapy was sometimes prescribed. Mr. Mouton obtained a copy of the autopsy report several days after his wife’s death and tried to understand it as best he could. In the summer of 1992, Mr. Mouton obtained a copy of his wife’s hospital records; he then consulted an attorney in the fall. On May 3, 1993, Mr. Mouton filed a medical malpractice claim, alleging in part that Dr. White had failed to properly administer anticoagulant therapy, i.e., therapy was initiated too late to be effective and the dosage of Heparin prescribed was well below the recommended minimum.
The trial judge considered the question of prescription twice. After the court’s first ruling in favor of Mr. Mouton, Dr. White’s applications for writs to this Court and to the Supreme Court were denied. The trial judge then reluctantly agreed, on the day set for trial on the merits and over the plaintiffs’ objection, to bifurcate the trial and hold a supplemental hearing on the exception of prescription. New evidence was | apresented, and the trial judge took judicial notice of the evidence which had been presented at the previous hearing. He then issued a final appealable judgment on the exception, again in plaintiffs’ favor, and reset the trial for resolution of the merits several months later. This appeal followed.
The trial judge made the following findings upon his first consideration of the exception:
*79 The Louisiana Revised Statutes Title 9:5628 requires a plaintiff to bring a medical malpractice claim within one year from the date of the alleged act of malpractice or “within one year from the date of discovery of the alleged act, omission, or neglect ...” The act also provides for a three year peremptive period which is not at issue in this matter. Since on its face this claim was brought to the Medical Malpractice Panel beyond the one year period, the issue is narrowed to whether or not the filing took place “within one year from the date of discovery”.
While there is some evidence that the petitioners had suspicions of something having gone wrong immediately after the death, nevertheless, the various suspicions and inquiries do not in this Court’s opinion give rise to a “discovery of the alleged act, omission, or neglect”. The Court is satisfied that the facts of the potential for malpractice came into the possession of the plaintiffs either after Mr. Mouton had received his wife’s medical records or after he had consulted with his attorneys. In either event, the filing of the claim with the Medical Review Panel on May 3, 1993, is within the one year time span of those incidents.
After the supplemental hearing, the trial judge made the following comments:
Hopefully, in order to put this matter at rest and also so that there will be a complete record on this thing, I have taken into consideration what I consider to be the supplementation of the record on the issue and I do not find that there is anything that was presented to me today that makes me feel that my decision in June of ’95 was wrong. I still think the decision of June of ’95 is the correct decision, even after “revisiting the issue” myself. That having been said the defendants Exception of Prescription is denied.
We find no manifest error in the conclusions reached by the trial judge. An appellate court may not set aside a trial court’s finding of fact in the absence of manifest error or unless it is clearly wrong. Stobart v. State, 617 So.2d 880 L(La.1993). The testimony of Mr. Mouton indicates that he was unaware of any possible malpractice involving the anticoagulant therapy in the first few months after his wife’s death. The law is clear that constructive knowledge sufficient to commence the running of prescription requires more than a mere apprehension that something may be wrong. Cordova v. Hartford Acc. & Indem. Co., 387 So.2d 574 (La.1980). While the medical records in this case did not suddenly reveal to Mr. Mouton that a certain act of malpractice had been committed, his receipt of the records served as the springboard for him to further investigate his concerns. Prescription began to run at that point.
For these reasons, the judgment of the trial court is affirmed.
AFFIRMED.
AMY, J., CONCURS AND ASSIGNS REASONS.