Judgment rendered August 11, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,020-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

IN RE: MEDICAL REVIEW PANEL
OF MASON HEATH

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Webster, Louisiana
Trial Court No. 78,203

Honorable E. Charles Jacobs, Judge

* * * * *

| | |
|---|---|
| SINGLETON LAW FIRM<br>By: W. James Singleton<br>　Brittany M. Young | Counsel for Appellants<br>Isiah Heath and<br>Chrishanna Smith,<br>O/B/O Mason Heath |
| GACHASSIN LAW FIRM<br>By: Julie Savoy | Counsel for Appellees<br>Robert Russell, M.D. and<br>Minden Medical Center |
| WATSON, BLANCHE, WILSON & POSNER<br>By: Chris J. LeBlanc | Counsel for Appellee<br>Cristal Kirby, M.D. |

* * * * *

Before MOORE, COX, and THOMPSON, JJ.

**MOORE, C.J.**

Isiah Heath and Chrishanna Smith appeal two judgments that sustained exceptions of prescription and dismissed their claim of medical malpractice arising from the circumcision of their newborn son, Mason, in 2015. For the reasons expressed, we affirm.

## FACTUAL BACKGROUND

Mason was born at Minden Medical Center ("MMC"), in Minden, La., on August 17, 2015; Dr. Robert Russell performed the circumcision the next day. A few weeks earlier, Ms. Smith had signed a "Consent for Circumcision of Newborn," acknowledging certain risks; when the couple brought Mason home, MMC gave them "Newborn Discharge Instructions." The surgery was Dr. Russell's only interaction with Mason.

According to their complaint with the Patient Compensation Fund ("PCF"), "after arriving home the family began to notice Mason suffering from complications. Approximately a month after the circumcision, Mason began experiencing what his parents label as flair [*sic*] ups. These * * * include swelling of the penis, pain, and disfigurement." Ms. Smith brought him to Minden Pediatrics for two well-child visits in September 2015, with Dr. Crystal Kirby. On the second of these, September 23, Dr. Kirby noted, "Mom concerned about how circumcision looks," found "penile adhesions with skin bridging," and prescribed a mild steroid cream to apply twice a day for 30 days. According to the complaint, Ms. Smith applied this consistently but it provided only temporary relief. September 23 was the final time that Dr. Kirby saw Mason; apparently, she left Minden Pediatrics.

However, Ms. Smith brought Mason back to Minden Pediatrics five times between October 2015 and February 2016;[1] on these trips, he saw a nurse practitioner, LeKidra Brown. On the December 2015 visit, Ms. Smith asked them to "check private area," and Nurse Brown advised her to keep applying the steroid cream.

On April 11, 2016, Ms. Smith brought Mason to Bienville Family Clinic, in Arcadia, for the first of several Kid Med well visits. At this time, according to the complaint, Mason was "still experiencing complications with the circumcision site." On a later visit, July 2, 2018, she reported that the child's "penis swells recurrently" and "the circumcision is not right when * * * not swollen." According to the complaint, a Dr. Jason Wilson examined the site and referred them to Willis-Knighton Pierremont, in Shreveport.[2]

Ms. Smith and Mr. Heath (hereinafter, "the claimants") brought Mason to Willis-Knighton on July 23, 2018. There, doctors diagnosed "penile skin bridge, meatal stenosis with lower urinary tract symptoms, dysuria and occasional penile pain," and recommended an outpatient surgery to excise the adhesion and skin bridge.

## PROCEDURAL HISTORY

The claimants filed this malpractice complaint with the PCF on August 14, 2018, naming as defendants Dr. Russell, Dr. Kirby, and Minden Medical Center and staff. As of September 2019, the medical review panel had not yet rendered an opinion.

---

[1] Four of these are on stationery that reads "Ruston Clinic."

[2] The progress note for this date is actually signed by a physician assistant, Cedric Willis.

MMC and Dr. Russell filed an exception of prescription in the district court. They showed that the only time they provided any healthcare for Mason was August 18, 2015, and that the complaint was not filed until August 14, 2018, far beyond the one-year limit of La. R.S. 9:5628 A. They argued that the claimants should have discovered the potential problem much sooner than one year before filing, notably when Dr. Kirby prescribed the steroid cream (September 23, 2015) or when Dr. Wilson found a "penile abnormality" (April 11, 2016). In support, they attached copies of the complaint and of charts from MMC, Bienville Family Clinic, Minden Pediatrics, and Willis-Knighton.

Dr. Kirby then filed a separate exception of prescription in the district court. She showed that her last contact with Mason was September 23, 2015, far more than one year before the complaint was filed. She argued that when Ms. Smith took Mason to Bienville Family Clinic (April 11, 2016), she complained about problems at the surgical site, and this was sufficient to place her on notice about potential malpractice. In support, Dr. Kirby attached the entire PCF file and copies of the charts from Minden Pediatrics and Bienville Family Clinic.

The claimants opposed Dr. Kirby's exception. They argued that the last time she saw Mason, Dr. Kirby told them he was "healing appropriately"; on subsequent visits to Minden Pediatrics, Nurse Brown told them just to keep applying the cream; and they never suspected anything was wrong until they took him to Dr. Wilson (July 2, 2018), and he told them the penis was abnormal. In support, they attached a copy of the

3

Bienville Family Clinic chart. Dr. Kirby filed a memo in response to this opposition.[3]

Hearing on the exception was set for Tuesday, June 2, 2020. Late Friday afternoon, May 29, counsel for the claimants filed an ex parte motion to continue alleging that their attorney had been "ill and her recovery period is uncertain," and that the case had been assigned to a "new attorney within the firm." On the day of the hearing, the new attorney showed up prepared only to argue the motion to continue, which the district court denied.

On the merits, counsel for Dr. Kirby submitted the matter on briefs; counsel for MMC and Dr. Russell argued and introduced into evidence all the exhibits attached to their exception. Claimants' attorney offered no argument or evidence.

### ACTION OF THE DISTRICT COURT

The district court wrote an opinion finding that the claimants changed their healthcare provider in April 2016, some six months after the defendants treated Mason, and "reported to the new provider that [he] was continuing to suffer problems from the circumcision." The court found this was sufficient information to constitute discovery under R.S. 9:5628, citing *Holmes v. LSU/E.A. Conway Med. Ctr.*, 43,662 (La. App. 2 Cir. 10/22/08), 997 So. 2d 605. The complaint, filed in August 2018, was simply too late.

The court later signed separate judgments sustaining the exceptions. The claimants have appealed, raising two assignments of error.[4]

---

[3] The record does not show that the claimants formally opposed MMC and Dr. Russell's exception, but these defendants responded to the opposition regarding Dr. Kirby.

[4] They do not contest the denial of their motion to continue.

## APPLICABLE LAW

A claim for medical malpractice must be brought "within one year from the date of the alleged act, omission, or neglect, or within one year from the discovery of the alleged act, omission, or neglect[.]" La. R.S. 9:5628 A. The statute continues, "[E]ven as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect." *Id.* The statute is a tripartite prescription provision, fixing (1) a one-year general rule, for damages that are immediately apparent, (2) a one-year discovery rule, for damages that are latent, and (3) an overall limitation of three years. *Guffey v. Lexington House LLC*, 18-1568 (La. 5/8/19), 283 So. 3d 1001; *Carter v. Haygood*, 04-0646 (La. 1/19/05), 892 So. 2d 1261.

The discovery rule is an important portion of the jurisprudential doctrine of *contra non valentem*. *Campo v. Correa*, 01-2707 (La. 6/21/02), 828 So. 2d 502. Under this rule, prescription begins "when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort." *Id.* A prescriptive period begins to run even if the injured party does not have actual knowledge of facts that would entitle him to bring a suit, as long as he has constructive knowledge of such facts. Constructive knowledge is "whatever notice is enough to excite attention and put the injured person on guard and call for inquiry". *Id.*; *Jenkins v. Starns*, 11-1170 (La. 1/24/12), 85 So. 3d 612. The ultimate issue in determining constructive knowledge is the "*reasonableness* of the patient's action or inaction, in light of his education, intelligence, the

5

severity of the symptoms, and the nature of the defendant's conduct."

*Campo v. Correa*, *supra* (emphasis in original); *Jenkins v. Starns*, *supra*.

In *Bailey v. Khoury*, 04-0620 (La. 1/20/05), 891 So. 2d 1268, the

supreme court elaborated:

> The damage suffered must at least be actual and
> appreciable in quality – that is, determinable and not merely
> speculative. But there is no requirement that the quantum of
> damages be certain or that they be fully incurred in some
> particular quantum, before the plaintiff has a right of action.
> Thus, in cases in which a plaintiff has suffered some but not all
> of his damages, prescription runs from the date on which he
> first suffered actual and appreciable damage, even though he
> may thereafter come to a more precise realization of the
> damages he has already incurred or incur further damages as a
> result of the completed tortious act.

*Id.* at 10, 891 So. 2d at 1276; *Watson v. Glenwood Reg'l Med. Ctr.*,

49,661 (La. App. 2 Cir. 4/15/15), 163 So. 3d 817, *writ denied*, 15-0945 (La.

8/28/15), 176 So. 3d 404.

Prescriptive statutes are strictly construed in favor of maintaining a

plaintiff's cause of action. *Correro v. Ferrer*, 16-0861 (La. 10/28/16), 216

So. 3d 794; *Borel v. Young*, 07-0419 (La. 11/27/07), 989 So. 2d 42.

Appellate review extends to law and facts, with the jurisprudential

rule that a trial court's factual findings will not be upset unless they are

manifestly erroneous or clearly wrong. *Snider v. Louisiana Med. Mut. Ins.*

*Co.*, 13-0579 (La. 12/10/13), 130 So. 3d 922; *Wooley v. Lucksinger*, 09-0571

(La. 4/1/11), 61 So. 3d 507. Under this standard, when there are two

permissible views of the evidence, the factfinder's choice between them

cannot be manifestly erroneous or clearly wrong. *Wooley v. Lucksinger*,

*supra*; *Rosell v. ESCO*, 549 So. 2d 840 (La. 1989). This standard applies to

findings on an exception of prescription, if evidence was offered in the trial

court. *Carter v. Haygood*, *supra*; *In re Med. Review Panel Proceedings for*

6

*claim of Ferguson v. Howell*, 53,139 (La. App. 2 Cir. 11/20/19), 284 So. 3d 1231, *writ granted on other grounds*, 19-02033 (La. 6/22/21), 318 So. 3d 34.

By contrast, when one or more trial court legal errors interdict the factfinding process, the manifest error standard no longer applies and, if the record is otherwise complete, the appellate court should make its own independent de novo review of the record and determine a preponderance of the evidence. *Evans v. Lungrin*, 97-0541 (La. 2/6/98), 708 So. 2d 731; *Ferrell v. Fireman's Fund Ins. Co.*, 94-1252 (La. 2/20/95), 650 So. 2d 742. However, not every trial court error automatically results in de novo review; only legal error that interdicts, or prevents the district court from making, a finding of fact will activate the more relaxed, de novo standard. *McGlothlin v. Christus St. Patrick Hosp.*, 10-2775 (La. 7/1/11), 65 So. 3d 1218; *Watson v. Glenwood Reg'l Med. Ctr.*, *supra*.

## DISCUSSION

By their first assignment of error, the claimants urge that the court erred as a matter of law in granting MMC and Dr. Russell's exception of prescription. They concede that prescription is usually a matter of manifest error, but contend that legal error mandates de novo review, *Campo v. Correa*, *supra*. They submit that the court made a factual error in finding that Dr. Kirby treated Mason only once, and a legal error when it shifted the burden of proof to the claimants. On the merits, they attempt to distinguish *Holmes v. LSU/E.A. Conway Hosp.*, *supra*, in that the instant record contains no evidence that their conduct was willful, negligent, or unreasonable; they contend that on de novo review, this court should accept their allegation that they were unaware of any problem until July 2018. Finally, they argue that La. R.S. 9:5628 A sets a one-year limit from discovery, subject to a three-

7

year outer limit; as their claim came within three years, they contend that it was timely. They conclude that MMC and Dr. Russell failed to prove that prescription had run.

The district court committed an error when it stated, in its opinion, that Dr. Kirby "treated Plaintiff one time on September 2, 2015." The record is abundantly clear that she treated Mason *twice*, on September 2 *and 23*, 2015. However, this was a *factual error*, not a legal error, and the court did not apply any incorrect legal standard or forgo making any requisite factual conclusions. As in *McGlothlin v. Christus St. Patrick* and *Watson v. Glenwood Reg'l Med. Ctr.*, *supra*, the error was not of the kind that requires us to disregard the district court's other findings of fact. Therefore, the matter is subject to manifest error review.

The MMC chart includes a document, "Consent for Circumcision of Newborn," which listed, as risks and complications, "infection; poor healing; injury to the penis; removal of an inadequate or an excessive amount of foreskin; abnormalities of the flow of urine[.]" Ms. Smith signed this consent on June 11, 2015, about two months before Mason's birth. The chart also includes "Newborn Discharge Instructions," advising parents "When to Call the Baby's Provider": "A very red penis, excessive swelling[.]" Ms. Smith signed this on August 17, 2015. The complaint alleged that flare-ups of swelling, pain, and disfigurement began occurring about one month after the operation, and that the parents voiced these concerns when they went to Dr. Kirby for two pediatric exams in September 2015. Further, they were still concerned about it when they brought Mason to Bienville Family Clinic on April 11, 2016. These facts strongly suggest

8

that the claimants had enough information to excite inquiry, place them on guard, and call for inquiry as to whether malpractice had occurred.

We recognize that the claimants did not get confirmation until July 2018, on a final visit to Bienville Family Clinic and the referral to Willis-Knighton. However, this court has rejected the argument that prescription does not begin to run until the patient receives a definitive diagnosis. *Watson v. Glenwood Reg'l Med. Ctr.*, *supra*; *Morgan v. Patwardhan*, 48,626 (La. App. 2 Cir. 3/12/14), 137 So. 3d 680, *writ denied*, 14-0919 (La. 8/25/14), 147 So. 3d 1118; *Bailey v. Haynes*, 37,038 (La. App. 2 Cir. 4/9/03), 843 So. 2d 584, *writ denied*, 03-1209 (La. 10/10/04), 856 So. 2d 1207.

As noted, the three-year overall limitation is expressly contingent on a claim "filed within one year from the date of such discovery," R.S. 9:5628 A. Despite the strict construction of prescriptive statutes to maintain actions rather than defeat them, the court has never disregarded the discovery rule in favor of a general, three-year limitation. Such an approach would, in essence, negate the general rule and the discovery rule in favor of the overall limitation. It would disregard the tripartite structure recognized in *Guffey v. Lexington House LLC*, *supra*, and *Carter v. Haygood*, *supra*. We decline to accept the claimant's position that their complaint was timely because it came within three years of the alleged harm.

After close review, we find the district court was not plainly wrong when it found that the claimants had sufficient information to excite their attention and put them on guard as to potential malpractice, by at least April 11, 2016. They had one year from this discovery date to file their complaint. La. R.S. 9:5628 A. They did not file their complaint until August 14, 2018,

9

over a year later.  The judgment granting MMC and Dr. Russell's exception of prescription is not wrong.  This assignment of error lacks merit.

By their second assignment of error, the claimants urge the court erred in finding that prescription began to run on April 11, 2016, as to Dr. Kirby. They reiterate that the delay in filing was not willful, negligent, or unreasonable; they submit that Ms. Smith was a 19-year-old, first-time mother with limited education, who relied on her healthcare providers.  They also argue that even after Dr. Kirby left Minden Pediatrics, she was still "directly supervising" Nurse Brown, and under La. Adm. C. T. 46, Pt. XLV, § 4505, all of Nurse Brown's acts should be imputed to Dr. Kirby.  Finally, conceding that Ms. Smith voiced some concerns to Dr. Kirby in September 2015 and to Dr. Wilson in July 2018, they contend that this was mere apprehension, and not sufficient to constitute discovery, as in *Griffin v. Kinberger*, 507 So. 2d 821 (La. 1987).

As noted, counsel for the claimants introduced nothing at the hearing on the exceptions.  Thus, there is no record evidence regarding their age, inexperience, lack of education, or degree of reliance on healthcare providers.  The record does show that after Ms. Smith signed a consent and received discharge instructions, the claimants noticed significant problems within one month, reported these to Dr. Kirby twice in September 2015, and again, to the new doctor, at Bienville Family Clinic, in April 2016.  These facts easily distinguish the case from *Griffin v. Kinberger*, *supra*, which states that the parents had absolutely no facts on which to base a suspicion of malpractice, involving a child born in 1964, until they saw a newspaper article about the condition in 1982.  The instant record contains sufficient facts to support the finding that discovery occurred in April 2016.

10

Finally, the Administrative Code provision cited is part of Title 46,

Part XLV, pertaining to *physician assistants*.  Section 4505 A states, in part:

> The practice of a physician assistant shall include the performance of medical services that are delegated by the supervising physician and are within the scope of the physician assistant's education, training, and licensure.  A physician assistant is considered to be and is deemed the agent of his supervising physician in the performance of all practice-related activities, including but not limited to assisting in surgery and ordering and interpretation of diagnostic and other medical services with appropriate supervision provided.

By its own terms, this section applies only to physician assistants, not

to nurse practitioners, such as Nurse Brown.  We are aware of no statute or

administrative rule that would make a nurse practitioner the agent of his or

her supervising physician.  This assignment of error lacks merit.

## CONCLUSION

For the reasons expressed, the judgments are affirmed.  Appellate

costs are to be paid by the claimants.

**AFFIRMED**.